616 So.2d 1336 (1993)
STATE of Louisiana, Plaintiff-Appellee,
v.
Theodess M. PEROW, Defendant-Appellant.
No. 24,582-KA.
Court of Appeal of Louisiana, Second Circuit.
March 31, 1993.
*1338 Richard E. Hiller, Indigent Defender Office, Shreveport, for defendant-appellant.
Richard Ieyoub, Atty. Gen., Paul J. Carmouche, Dist. Atty., Mark A. Perkins and Catherine M. Estopinal, Asst. Dist. Attys., Shreveport, for plaintiff-appellee.
Before NORRIS, LINDSAY and VICTORY, JJ.
NORRIS, Judge.
The defendant, Theodess J. Perow, appeals his conviction for second degree murder. La. R.S. 14:30.1. Perow, 15 years old at the time of the offense, was charged by grand jury indictment and tried before a jury as an adult. La. R.S. 13:1570. He was sentenced to life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence. For the reasons assigned below, we affirm the defendant's conviction and sentence.

FACTS
Shortly before 11:00 p.m. on January 15, 1991, Perow, along with Michael Stockholm, Timothy Wallace, and Earl Jackson, walked from Jackson's home to the Shell Mart on Hearne Avenue in Shreveport. After Wallace, the only adult in the group, purchased four cans of beer, the four began to walk back to Jackson's home, taking a worn path that ran from the rear of the Shell Mart parking lot, behind several vacant homes and on to James Street. Wallace walked ahead as the three juveniles lingered behind.
At approximately the same time, Cora Fisher drove into the Shell Mart parking lot on a flat tire. Erskine Bridges, whom Mrs. Fisher knew as an acquaintance of her son, happened to be present at the Shell Mart and offered to change the tire. While he changed the tire, Mrs. Fisher went into the store and made a purchase. After the clerk warned Mrs. Fisher about recent purse snatchings outside the store, another customer Harold Reynolds agreed to escort the 56-year-old Mrs. Fisher back to her car.
Perow, now standing on the back steps of one of the vacant houses located behind *1339 the Shell Mart, watched Mrs. Fisher and Mr. Reynolds as they walked across the parking lot. He pulled a Marlin .22 caliber rifle from beneath his trenchcoat and told Jackson that he was "fixing to shoot him somebody." (R.p. 432). After Jackson puportedly asked Perow not to do it, both Jackson and Stockholm watched Perow point the rifle toward Mrs. Fisher and Mr. Reynolds, adjust his aim as they moved across the parking lot, and fire a single shot. The bullet struck the left rear portion of Mrs. Fisher's head, killing her almost instantly.
Karen Jackson, who recognized Perow, Earl Jackson, and Stockholm, was walking across the parking lot toward the store when she saw the three juveniles standing behind the Shell Mart near the vacant houses. She saw Perow pull the rifle from beneath his trenchcoat, heard a single gunshot, and saw Mrs. Fisher fall to the ground. When she looked back toward the vacant houses, she saw the three juveniles running away, with Perow still holding the rifle in his hand.
The three juveniles ran back to Earl Jackson's home, passing Wallace along the way. Marcus Jenkins, another juvenile who had remained at Jackson's the entire time, heard Perow joke that he "didn't shoot her, the bullet shot her." (R.p. 518).
Perow was convicted of second degree murder following a jury trial in May 1992. He subsequently filed a motion for new trial, a motion for post verdict judgment of acquittal, and a motion in arrest of judgment. After a June 5, 1992 hearing, the trial judge denied each motion and imposed the statutorily mandated sentence of life imprisonment without benefit of probation, parole, or suspension of sentence. La.R.S. 14:30.1 B. Perow now appeals.

DISCUSSION
Perow raises seven assignments of error. However, he has failed to brief three assignments addressing the propriety of the sentence and certain evidentiary rulings. Assignments of error which are neither briefed nor argued are considered abandoned. URCA Rule 2-12.4; State v. Schwartz, 354 So.2d 1332 (La.1978); State v. Kotwitz, 549 So.2d 351 (La.App. 2d Cir.1989), writ denied 558 So.2d 1123 (1990). Thus, we do not consider Perow's second, fifth, or seventh assignments of error.

Sufficiency of Evidence
Perow contends that the trial court erred when it denied his motions for new trial and for post verdict judgment of acquittal. Both motions urge that the evidence presented by the prosecution was insufficient to support the conviction for second degree murder. These arguments are without merit.
A motion for new trial shall be granted by the court if the verdict is contrary to the law and the evidence. La.C.Cr.P. art. 851. A motion for a post verdict judgment of acquittal shall be granted by the court only if it finds that the evidence, viewed in a light most favorable to the state, does not reasonably permit a finding of guilt. If the court finds that the evidence, viewed in a light most favorable to the state, supports only a conviction of a lesser included responsive offense, the court, in lieu of granting a post verdict judgment of acquittal, may modify the verdict and render a judgment of conviction on the lesser included responsive offense. La.C.Cr.P. art. 821.
The constitutional standard of review for the sufficiency of evidence to support a conviction is whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Captville, 448 So.2d 676 (La.1984); State v. Bellamy, 599 So.2d 326 (La.App. 2d Cir.), writ denied 605 So.2d 1089 (1992).
When circumstantial evidence is used to prove the commission of the offense, every reasonable hypothesis of innocence must be excluded as to that element of the crime which the circumstantial evidence tends to prove. La.R.S. 15:438. However, this rule of circumstantial evidence does not establish a standard of appellate *1340 review separate from that set out in Jackson. State v. Wright, 445 So.2d 1198 (La.1984); State v. Chism, 436 So.2d 464 (La.1983). Ultimately, all evidence, both direct and circumstantial, must be sufficient under Jackson to satisfy a rational juror that the defendant is guilty beyond a reasonable doubt. Exclusion of every reasonable hypothesis of innocence is therefore a component of the more comprehensive reasonable doubt standard, where circumstantial evidence is used to convict. State v. Wright, supra.
The elements of second degree murder, as charged in the instant case, are set forth in La.R.S. 14:30.1 A(1):
A. Second degree murder is the killing of a human being:
(1) When the offender has a specific intent to kill or to inflict great bodily harm[.]
Perow argues that the verdict is contrary to law because the prosecution's evidence was insufficient to prove both that he was the person who fired the shot and that he had specific intent to kill or inflict great bodily harm. In the event that the evidence was sufficient to establish that he fired the shot, he argues in his post trial motions, the court should have modified the verdict to manslaughter which, unlike second degree murder, does not require a showing of specific intent.[1]
Specific intent is defined as that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act. La.R.S. 14:10(1). Although intent is a question of fact, it need not be proven as a fact; instead, it may be inferred from the circumstances of the transaction. State v. Fuller, 414 So.2d 306 (La.1982).
The prosecution presented a number of witnesses at trial, among them several eyewitnesses to the shooting. Michael Stockholm testified that he saw Perow, wearing a trenchcoat, aim the gun at the victim and her escort. He saw Earl Jackson try to push the gun away and heard Jackson tell Perow not to do it. He then watched as Perow fired a single shot. He further stated that as the three of them ran, Jackson asked Perow why he did it; Perow responded that he "wanted to see what it felt like to kill somebody[.]" (R.p. 233).
Earl Jackson testified that he too saw Perow, wearing a trenchcoat, point the rifle at a man and woman. He stated that Perow announced that he was fixing to shoot somebody and that he asked Perow not to do it. He further stated that Perow fired the rifle and that he saw the woman fall. He testified that immediately after Perow fired, he said, "I shot `em" and began to laugh loudly. (R.p. 437).
Karen Jackson testified that, as she walked onto the Shell Mart parking lot, she saw Perow, Stockholm, and Earl Jackson on the trail behind the Shell Mart. She stated that Perow was wearing a trenchcoat and was holding a long object which looked like a gun. She heard a shot and saw a woman fall to the ground. When she looked back to where the three juveniles had been standing, she saw the three of them running; Perow was still holding the gun.
Timothy Wallace testified that, although he was walking ahead of the three juveniles and did not actually witness the shooting, he heard Perow say, "Hold up; I have something to do." (R.p. 312). He then heard Jackson ask, "What you doing with that?" (R.p. 313). Next, he heard a single shot and watched the three juveniles run past him. According to Wallace, Perow was carrying a rifle as he ran.
John Kennedy testified that he and his girlfriend were sitting on the back porch of her house on Greenwood Road when they *1341 heard a gunshot just after 11:00 p.m. Shortly thereafter, he saw three males, one white[2] and two black, run past the house. One of the black males was wearing a trenchcoat and carrying a gun.
Perow testified, on his own behalf, that he was not wearing a trenchcoat on the night of January 15, 1991. He further testified that he was not carrying a gun that night but that he had witnessed Earl Jackson pull a rifle from beneath a board in one of the vacant houses. Perow claimed that he grabbed the gun and asked Jackson what he was doing. He then threw the gun on the ground and walked around to the front of the houses. While he was in front of the houses, he heard a gunshot. He claimed that Jackson shot the lady. (R.pp. 578-84).
Marcus Jenkins, who had stayed at Jackson's house while the others went to the store, also testified for the defense. He stated that once the others had returned from the store and after Perow had left for the night, Earl Jackson, Stockholm, and Wallace conspired to blame Perow for the shooting. According to Jenkins, they agreed on a single version of the night's events and called the police the next morning. Jenkins further testified that, although he did not actually know who had done the shooting, Jackson was the person who wiped the prints off the rifle and then discarded it. Jenkins did admit, however, that he thought he heard Perow say that he had shot the lady in the head.
On cross-examination, the prosecution impeached Jenkins's testimony with the use of his prior statement to the police. Jenkins admitted his prior statement wherein he stated that Perow was wearing a trenchcoat and that Perow wiped the gun clean when he returned from the store. He also stated that Perow admitted shooting the lady in the head and that when he asked Perow why he shot her, Perow joked that he "did not shoot her, the bullet shot her." (R.p. 518). He further stated that Perow said he shot the lady "for fun." (R.p. 521).
Perow's primary contention is that the testimony of the prosecution's witnesses was inconsistent, and that due to these inconsistencies, the witnesses were unworthy of belief. He contends that the testimony of Marcus Jenkins was significantly more credible and established that the state's witnesses had "conspired" to place the blame for the shooting on Perow.
Indeed, there were some inconsistencies in the testimony of the state's witnesses. Stockholm testified that he was at Rutherford House until 7:00 p.m. on the day of the shooting. However, both Jenkins and Karen Jackson stated that they had seen him earlier that day. Earl Jackson testified that he never went inside the Shell Mart on the night of the shooting, yet the store clerk remembered seeing him there. Karen Jackson testified that she heard loud laughter coming from the area of the vacant houses prior to the shooting and that she ran into the store to get help after the shooting. However, Earl Jackson stated that the laughter came after the shooting, and the store clerk stated that he did not remember any young lady coming in the store to ask for help. Notwithstanding these inconsistencies, the state's witnesses were consistent in their testimony that Perow shot Mrs. Fisher with a rifle after expressing his intent to do so.
Whenever there is conflicting testimony as to factual matters, the question of credibility of witnesses is within the sound discretion of the trier of fact; such factual determinations will not be disturbed on review unless clearly contrary to the evidence. State v. Mussall, 523 So.2d 1305 (La.1988); State v. Holland, 544 So.2d 461 (La.App. 2d Cir.1989); State v. Tate, 543 So.2d 1093 (La.App. 2d Cir.), writ denied 551 So.2d 629 (1989); State v. Smith, 445 So.2d 521 (La.App. 3d Cir.), writ denied 449 So.2d 1346 (1984). See also State v. Jones, 601 So.2d 339 (La.App. 2d Cir.1992).
As the trier of fact, the jury was free to accept or reject, in whole or in part, the testimony of any witness. Furthermore, where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the *1342 credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. State v. Bacon, 578 So.2d 175 (La.App. 1st Cir.1991); State v. Richardson, 459 So.2d 31 (La.App. 1st Cir.1984).
To the extent that inconsistent or conflicting testimony was involved in this case, the guilty verdict indicates that the jury resolved such conflicts in favor of the state's witnesses. With regard to Jenkins's "conspiracy" testimony, the jury apparently viewed his prior inconsistent statement and his absence from the scene of the shooting as a basis to reject his testimony. The jury observed the demeanor of all the witnesses, and it was clearly in the best position to weigh their testimony and evaluate their credibility. We cannot undermine that credibility determination based upon the record before us.
Furthermore, the verdict indicates that the jury concluded Perow was guilty of second degree murder, as charged, and specifically rejected the possibility of a manslaughter verdict. Considering that Perow, after announcing his intent to shoot "someone," aimed and fired his rifle at Mrs. Fisher, a rational trier of fact might well have concluded that Perow acted with deliberation and reflection and that he actively desired to kill or cause great bodily harm to Mrs. Fisher. See State v. Rosiere, 488 So.2d 965 (La.1986); State v. Neslo, 433 So.2d 73 (La.1983). We conclude that the evidence, viewed in the light most favorable to the prosecution, was sufficient for the jury as a rational finder of fact to conclude that Perow was guilty of the second degree murder of Mrs. Cora Fisher.

Motion in Arrest of Judgment
Perow also asserts that the trial court erred in denying his motion in arrest of judgment and submits said motion on its pleadings.
La.C.Cr.P. art. 859 provides, in pertinent part:
The court shall arrest the judgment only on one or more of the following grounds:
. . . .
(3) The court is without jurisdiction of the case[.]
Perow's motion centers around the constitutionality of La.R.S. 13:1570[3] which provides, in pertinent part:
Except as otherwise provided herein, the [juvenile] court shall have exclusive original jurisdiction in proceedings:
A. Concerning any child whose domicile is within the parish or who is found within the parish:
. . . .
(5) Who violates any law or ordinance, except a child who, after having become fifteen years of age or older is charged with having committed first degree murder, second degree murder, manslaughter, aggravated rape[.] Once such a child has been charged with having committed any offense listed in this Paragraph, the district court shall retain jurisdiction over his case[.]
Perow argues that R.S. 13:1570 violates both his rights to due process and equal protection, and consequently, does not properly vest jurisdiction in the district court. However, the Louisiana Supreme Court has definitively held that R.S. 13:1570 involves neither a "suspect classification" nor a "fundamental right" and therefore will survive a constitutional attack based on equal protection and due process. State v. Leach, 425 So.2d 1232 (1983); State v. Petrovich, 396 So.2d 1318 (La.1981). The Court has further held that the classifications set out in the statute are not arbitrary and bear a rational relationship to a legitimate state interest, the protection of its citizens by exposing older minors who are accused of committing serious and violent felonies to the usual procedures and sanctions of the state's criminal law systems. Leach, supra.
*1343 Perow further argues that R.S. 13:1570 is unconstitutional as applied because it does not afford the defendant a hearing and fails to establish guidelines which the district attorney must follow in deciding whether to proceed against a youthful defendant in juvenile court or in district court.
The Louisiana Supreme Court addressed this precise argument in State v. Perique, 439 So.2d 1060 (1983). In Perique, the Court noted that R.S. 13:1570 is a jurisdictional statute. Pursuant to the statute's provisions, the juvenile courts have been given jurisdiction only over those juveniles who do not fall within the categories embodied in the statute. The fifteen or sixteen year-old charged with one or more of the offenses specified in the statute is subject to the exclusive jurisdiction of the district courts.
The Court further noted that, although all juveniles are subject to juvenile rather than adult procedures until a bill of information is filed or a grand jury indictment returned against the juvenile, this does not mean that a de facto transfer of jurisdiction takes place when a bill of information is filed or a grand jury indictment returned. Once a 15- or 16-year-old is charged with one or more of the offenses specified in the statute, there is no question of transfer of jurisdiction. Rather, the juvenile court is automatically divested of jurisdiction. This divestiture is not a matter of discretion on the part of the juvenile court or the district attorney, but is established by R.S. 13:1570. Perique, supra.
The legislature has decided that 15-year-olds charged with second degree murder should be treated in all respects as adults. The legislature has also decided that the district attorney shall determine whom, when, and how he shall prosecute. La.C.Cr.P. art. 61; State v. Foley, 456 So.2d 979 (La.1984); Perique, supra. Under these circumstances, there is no requirement that the district attorney establish or follow guidelines for determining whom or how he shall prosecute, nor that he make this determination at a hearing with the defendant. The defendant is simply not being deprived of any statutory right which might warrant a hearing. Perique, supra.
Perow also argues that La. Const. art. 5, § 19, which authorized R.S. 13:1570, is itself unconstitutional because it violates the general rule that juveniles not be prosecuted as adults. Article 5, § 19, as amended by Acts 1979, No. 801, § 1, provides:
The determination of guilt or innocence, the detention, and the custody of a person who is alleged to have committed a crime prior to his seventeenth birthday shall be pursuant to special juvenile procedures which shall be provided by law. However, the legislature may (1) by a two-thirds vote of the elected members of each house provide that special juvenile procedures shall not apply to juveniles arrested for having committed first or second degree murder, manslaughter, aggravated rape, armed robbery, aggravated burglary or aggravated kidnapping, and (2) by two-thirds vote of the elected members of each house lower the maximum ages of persons to whom juvenile procedures shall apply, and (3) by two-thirds vote of the elected members of each house establish a procedure by which the court of original jurisdiction may waive special juvenile procedures in order that adult procedures shall apply in individual cases. The legislature, by a majority of the elected members of each house, shall make special provisions for detention and custody of juveniles who are subject to the jurisdiction of the district court pending determination of guilt or innocence.[4]
(footnote added).
Perow does not cite any source for his proposition that the constitution mandates noncriminal treatment of juveniles. We know of no such mandate from the United *1344 States Constitution. While the Louisiana Constitution, prior to 1979, did establish a general rule of noncriminal treatment of juveniles, that rule has since been abrogated by the 1979 amendment to article 5, § 19. Perique, supra. Cf. State in the Interest of Hunter, 387 So.2d 1086 (1980) (interpreting article 5, § 19 as it existed prior to the 1979 amendment). Indeed, the Louisiana Supreme Court has stated:
[I]t can no longer be said that noncriminal treatment of juveniles is the general rule mandated by the constitution, since the constitution now permits the legislature to enact a statute exempting any juvenile arrested for any of the seven enumerated offenses from "special juvenile procedures."
Perique, 439 So.2d at 1063 (emphasis in original).
In light of the foregoing, all of Perow's arguments in support of the unconstitutionality of R.S. 13:1570 and article 5, § 19 are without merit. Accordingly, the district court had proper jurisdiction over Perow. The trial judge was not plainly wrong in denying Perow's motion in arrest of judgment.

Mistrial
Perow further asserts that the trial court erred in denying his motion for mistrial. During the cross examination of state witness Michael Stockholm, defense counsel asked why Stockholm was at Earl Jackson's house on the day of the murder:
Q: Now, why did you go to Earl's? Why were you running around with Earl? Why were you over there with him?
A: Me and a friend of mine named Marcus, he was in there [Rutherford House] with me and we left because he had found out that Theodess had escaped from juvenile and he wanted to go see him. (R.p. 253).
Defense counsel objected and moved for a mistrial on the grounds that the witness's remark was unresponsive, highly prejudicial, and created the necessity for Perow to take the stand in his defense. The trial judge denied the motion for mistrial, finding that defense counsel had asked an open-ended question and that Stockholm's answer was indeed responsive.
Perow argues on appeal that Stockholm's remark prejudiced the jury by suggesting, not only that Perow was a juvenile delinquent, but that he was an escaped one at that. He further argues that the remark almost required that he take the stand to explain or refute it in contravention of his fifth amendment right against self-incrimination.
Mistrial is a drastic remedy which, unless mandatory, should be declared only when unnecessary prejudice results to the accused. State v. Smith, 430 So.2d 31 (La.1983); State v. Alexander, 351 So.2d 505 (La.1977); State v. Powell, 598 So.2d 454 (La.App. 2d Cir.), writ denied 605 So.2d 1089 (1992). Since the instant remark was made by Stockholm, who is not an officer of the court, mistrial is not mandatory. See C.Cr.P. art. 770. In cases such as this, the trial judge is granted discretion to determine whether a fair trial is impossible, or whether an admonition is adequate to assure a fair trial. State v. Narcisse, 426 So.2d 118 (La.1983), cert. denied 464 U.S. 865, 104 S.Ct. 202, 78 L.Ed.2d 176 (1983); State v. Sneed, 571 So.2d 735 (La.App. 2d Cir.1990). Factors which may be considered in determining whether a mistrial is warranted are whether the statement was deliberately elicited by the district attorney, whether it was responsive to the question, and whether the witness purposely uttered it to prejudice the defendant. State v. Perry, 420 So.2d 139 (La.1982), cert. denied 461 U.S. 961, 103 S.Ct. 2438, 77 L.Ed.2d 1322 (1983); State v. Gene, 587 So.2d 18 (La.App. 2d Cir.1991). The trial court's ruling will not be disturbed on review absent an abuse of discretion. State v. Narcisse, supra; State v. Alexander, supra.
Stockholm's statement was not elicited by the state. Rather, the remark was clearly responsive to a question posed by defense counsel on cross-examination. Moreover, there is no indication that Stockholm made the remark with the intent to prejudice Perow. The remark was made in *1345 an attempt to explain his answer to defense counsel's question. Furthermore, Stockholm's remark was somewhat vague and did not detail any previous crime committed by Perow. Generally, ambiguous or obscure references to other crimes made without explanation or elaboration do not prejudice the defendant. State v. Tribbet, 415 So.2d 182 (La.1982); State v. Gene, supra. On the instant record, we cannot say that the trial judge abused his discretion in denying the motion for mistrial.

Admissibility of Photographs
Perow further asserts that the trial court erred in admitting into evidence two photographs of the victim which he claims are gruesome, prejudicial, and redundant.
State Exhibit # 10 is a black and white reproduction of a color photo taken at the scene of the crime, depicting the victim as she lay on the Shell Mart parking lot. The state initially sought to introduce the source photo wherein the pool of blood around the victim's head could be seen in striking color. The court, however, refused to admit the color photo, opting instead to admit the black and white reproduction.
State Exhibit # 25 is a color photograph taken by the coroner's office, depicting the entrance wound on the victim's partially shaven head. The photo was introduced in connection with the coroner's testimony.
In general, photographs are admissible if they illustrate any fact, shed any light upon an issue in the case, or are relevant to describe the person, thing, or place depicted. State v. Landry, 388 So.2d 699 (La.1980), cert. denied 450 U.S. 968, 101 S.Ct. 1487, 67 L.Ed.2d 618 (1981); State v. Wiley, 513 So.2d 849 (La.App. 2d Cir.1987), writ denied 522 So.2d 1092 (La.1988). In particular, gruesome photographs are admissible if they are relevant and their probative value outweighs their prejudicial effect. State v. Lindsey, 404 So.2d 466 (La.1981), cert. denied 464 U.S. 908, 104 S.Ct. 261, 78 L.Ed.2d 246 (1983); State v. Wiley, supra.
In the instant case, the photo of the victim as she appeared at the scene of the shooting was relevant to prove identity of the victim, location, and position of the body. See State v. Edwards, 406 So.2d 1331 (La.1981), cert. denied, 456 U.S. 945, 102 S.Ct. 2011, 72 L.Ed.2d 467 (1982). The photo also revealed that the victim's jewelry remained on her body, tending to preclude robbery as a possible motive.
The coroner's photo better illustrated the precise location of the bullet wound, as the blood had been wiped away and the victim's hair had been partially shaven. Photographs are admissible to corroborate other evidence of the manner in which death occurred and to establish the location and severity of the wound. State v. Edwards, supra.
The trial court has considerable discretion in admitting photographs and its ruling will not be disturbed on appeal in the absence of an abuse of that discretion. State v. Kelly, 362 So.2d 1071 (La.1978), cert. denied 439 U.S. 1118, 99 S.Ct. 1025, 59 L.Ed.2d 77 (1979); State v. Wiley, supra. A review of the photographs at issue here reveals that any prejudicial effect was far outweighed by their significant probative value. Thus, this assignment lacks merit.

Conclusion
We have reviewed the record for errors patent and have found none.
For the reasons assigned, the conviction and sentence of Theodess J. Perow are affirmed.
AFFIRMED.
NOTES
[1] Manslaughter is defined by La.R.S. 14:31, in relevant part, as:

(2) A homicide committed, without any intent to cause death or great bodily harm.
(a) When the offender is engaged in the perpetration ... of any intentional misdemeanor directly affecting the person[.]
Perow argues that when the victim was killed, he was merely committing a misdemeanor, specifically, aggravated assault. He suggests that he had no specific intent to kill or inflict great bodily harm, but that the victim was an innocent bystander who, essentially, got in the way.
[2] Of the three males concerned, Michael Stockholm was the only one who was white.
[3] La.R.S. 13:1570 was repealed by Acts 1991, No. 235, § 17, effective January 1, 1992. The substantive provisions of that statute are now found in article 305 of the Louisiana Children's Code.
[4] It is worthy of note that the legislature did not enact a statute which tracked the language of the constitutional provision. Perique, supra. As previously discussed, rather than provide a procedure for waiver of juvenile court jurisdiction, as contemplated by subsection (3) of the constitutional provision, in cases where a 15-year-old commits second degree murder, the legislature has vested exclusive jurisdiction in the district court.