743 So.2d 232 (1999)
STATE of Louisiana, Appellee,
v.
Ronald Wayne MORRISON, Jr., Appellant.
No. 32123-KA.
Court of Appeal of Louisiana, Second Circuit.
July 22, 1999.
*235 Pamela G. Smart, Assistant Indigent Defender, Counsel for Appellant.
Richard P. Ieyoub, Attorney General, Paul J. Carmouche, District Attorney, Catherine M. Estopinal, Assistant District Attorney, Counsel for Appellee.
Before WILLIAMS, KOSTELKA and DREW, JJ.
WILLIAMS, Judge.
As a result of a grand jury indictment, the defendant, Ronald Wayne Morrison, Jr., was charged with second degree murder, a violation of LSA-R.S. 14:30.1. After a jury trial, the defendant was convicted as charged and sentenced to serve life imprisonment at hard labor without benefit of parole, probation or suspension of sentence. The defendant contends the trial court erred in denying his motions for a new trial and for post-verdict judgment of acquittal. He also contends the trial court erroneously admitted prejudicial and gruesome coroner's photographs into evidence. Defendant has also filed a supplemental brief wherein he asserts three additional assignments of error. For the following reasons, we affirm the defendant's conviction and sentence.

FACTS
On April 6, 1997, officers with the Shreveport Police Department responded to a report of a body lying under a tree located in an open field in the 3700 block of Portland Street in Shreveport, Louisiana. The victim, Fred Kelly, had been severely beaten and shot once in the chest.
On the night of his death, Kelly had been working as a cabdriver for Casino Cabs, Inc. Police officers investigating the crime discovered that one of the victim's fares had come from a residence which was located approximately two blocks from the crime scene. When the officers arrived at the residence, they encountered the defendant, Ronald Morrison, Jr., lying on the front porch of the house. The defendant informed the officers that his girlfriend, Yolanda Williams, lived there and that he was not aware of a cab coming there that night. However, he agreed to accompany the officers to the police station to discuss the murder.
At the station, the officers observed dried blood on the defendant's hand. The defendant consented to a gunshot residue test and a blood test. DNA test results later revealed that some of the blood was that of the victim. To further assist in the investigation, the defendant also consented to give the officers a sample of the clothes he was wearing. The defendant was then questioned and released.
The officers interviewed Yolanda Williams at her residence and she informed them that she had called for a cab for the defendant the evening of the murder. Williams stated that, as far as she knew, when the cab arrived, the defendant left in the cab. The officers received consent from Williams' mother to search the residence. Williams gave the officers a gym bag that contained the defendant's property. The officers searched the bag and discovered a shirt that matched the description of that which a witness had described the assailant as wearing. The bag also contained a handgun.
The defendant was initially charged with first degree murder, a violation of LSA-R.S. 14:30. However, a grand jury indicted the defendant for second degree murder, a violation of LSA-R.S. 14:30.1. After a jury trial, the defendant was found guilty as charged and sentenced to serve life *236 imprisonment, without benefit of parole, probation or suspension of sentence. The defendant appeals.

DISCUSSION

Sufficiency of the Evidence
The defendant argues that the evidence presented was insufficient to support his conviction of second degree murder, and therefore, the trial court erred in denying his motion for post-verdict judgment of acquittal.
The proper standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found that the state proved the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). The Jackson standard is applicable in cases involving both direct and circumstantial evidence. State v. Maxie, 30,877 (La.App.2d Cir.8/19/98), 719 So.2d 104. An appellate court reviewing a sufficiency of the evidence claim will not assess the credibility of a witness or reweigh the evidence to overturn a fact finder's determination of guilt. State v. Cotton, 25,940 (La.App.2d Cir.3/30/94), 634 So.2d 937.
In the present case, the defendant was found guilty of second degree murder. LSA-R.S. 14:30.1(A), in pertinent part, defines second degree murder as:
[T]he killing of a human being: (1) When the offender has a specific intent to kill or to inflict great bodily harm; or (2)(a) When the offender is engaged in the perpetration or attempted perpetration of ... armed robbery, first degree robbery, or simple robbery, even though he has no intent to kill or to inflict great bodily harm....
Specific intent is defined as that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act. State v. Maxie, supra. Specific intent is a state of mind and, as such, need not be proven as a fact, but may be inferred from the circumstances and actions of the accused. State v. Maxie, supra. The determination of whether the requisite intent is present in a criminal case is for the trier of fact. State v. Maxie, supra.
Dr. George McCormick, Caddo Parish Coroner, testified that the victim was shot once in the chest and suffered large, deep lacerations, most of which were to his head and face. Dr. McCormick also testified that, as a result of being beaten, the victim suffered a fractured nose and skull, hemorrhaging in and around the brain and multiple fractured teeth. According to Dr. McCormick, the head and facial wounds were so severe that the victim could have died from them alone. The severity of the victim's wounds illustrate that the defendant had the requisite specific intent to kill or to inflict great bodily harm.[1]
Additional evidence presented at the trial supports the fact that the defendant also robbed the victim. The robbery, coupled with the victim's death, was sufficient to convict the defendant of second degree murder. Intent on the part of the defendant is not required.
The defendant argues that there was no proof that anything of value was taken from the victim, and therefore, there is no proof that he robbed the victim. LSA-R.S. 14:2 provides:
"Anything of value" must be given the broadest possible construction, including any conceivable thing of the slightest value, movable or immovable, corporeal *237 or incorporeal, public or private, and including transportation, telephone and telegraph services, or any other service available for hire. It must be construed in the popular sense of the phrase, not necessarily as synonymous with the traditional legal term "property ..."
Alan Blankenship, a dispatcher for Casino Cabs, Inc., testified that the victim had fares prior to picking up the defendant, and the defendant was the victim's last fare for that night. According to Blankenship, a cab driver could make between $50 and $100 in a night. A small amount of money was found on the victim, however, the officers investigating the crime scene did not recover any money from the cab.
Regarding "anything of value," the evidence shows that the defendant took the money the victim had collected from his other fares, as well as, the value of the defendant's cab ride. See, State v. Roblow, 623 So.2d 51 (La.App. 1st Cir.1993). Viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have concluded beyond a reasonable doubt that the evidence presented by the state was sufficient to find the defendant guilty of second degree murder. This assignment is without merit.

Motion for New Trial
The defendant contends that the trial court erred in denying his motion for a new trial. Defendant argues that, the prejudicial effect of the coroner's photographs outweighed their probative value, and therefore, the trial court erred in allowing the photographs to be admitted into evidence.
Photographs are generally admissible if they illustrate any fact, shed light upon any issue in the case, or serve to describe the person, thing or place depicted. State v. Landry, 388 So.2d 699 (La.1980), cert. denied, 450 U.S. 968, 101 S.Ct. 1487, 67 L.Ed.2d 618 (1981); State v. Perow, 616 So.2d 1336 (La.App. 2d Cir. 1993), writ denied, 623 So.2d 1303 (La. 1993). The test for admissibility of gruesome photographs is whether their probative value outweighs any prejudicial effect which may result from the display to the jury. State v. Gay, 29,434 (La.App.2d Cir.6/18/97), 697 So.2d 642. Photographs of a victim's body depicting fatal wounds are generally relevant in proving corpus delicti; establishing the victim's identity and the location, severity and number of wounds and corroborating the other evidence of the manner in which the death occurred. State v. Gay, supra. The trial court has great discretion in admitting photographs into evidence. Absent an abuse of that discretion, the ruling will not be disturbed. State v. Perow, supra; State v. Gay, supra.
The state argues that the photographs were crucial in proving that the defendant had the specific intent to kill the victim or to inflict great bodily harm, and therefore, the prejudicial effect of the photographs did not outweigh their probative value. The coroner's photograph of the victim's face shows that, as a result of being beaten, bones in his entire face were fractured. Dr. McCormick testified that the wounds that the victim sustained as a result of being beaten were fatal.
After reviewing the photographs in question, we conclude that the trial court did not abuse its great discretion in admitting the photographs into evidence. The photographs leave no question as to the defendant's intent to either kill or inflict great bodily harm. Because the photographs were necessary to prove the defendant's intent, their probative value outweighed any prejudicial effect which may have resulted from their display to the jury. This assignment is without merit.

Ineffective Assistance of Counsel
In his supplemental brief, the defendant asserts, by assignments number five and seven, that he received ineffective assistance of counsel because his trial counsel failed to produce material witnesses at trial and failed to adequately prepare for cross-examination of the medical examiner.
Although ineffective assistance of counsel claims normally are raised in a *238 petition for post-conviction relief, which creates opportunity for full evidentiary hearing, where the record contains evidence sufficient to resolve the issue and alleged ineffectiveness of counsel is raised on appeal, the issue may be considered on direct appeal in the interest of judicial economy. State v. Jones, 29,805 (La. App.2d Cir.9/24/97), 700 So.2d 1034, citing, U.S.C.A. Const. Amend. 6; LSA-C.Cr.P. art. 930.
The right of a defendant in a criminal proceeding to the effective assistance of counsel is mandated by the Sixth Amendment to the U.S. Constitution. State v. Wry, 591 So.2d 774 (La.App. 2d Cir.1991). A claim of ineffectiveness of counsel is analyzed under the two-prong test developed by the United States Supreme Court in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).
To establish that his attorney was ineffective, the defendant first must show that counsel's performance was deficient. This requires a showing that counsel made errors so serious that he was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.
The relevant inquiry is whether counsel's representation fell below the standard of reasonableness and competency as required by prevailing professional standards demanded for attorneys in criminal cases. Strickland v. Washington, supra; State v. Moore, 575 So.2d 928 (La. App. 2d Cir.1991). The assessment of an attorney's performance requires that his conduct be evaluated from counsel's perspective at the time of the occurrence. A reviewing court must give great deference to trial counsel's judgment, tactical decisions and trial strategy, strongly presuming he has exercised reasonable professional judgment. State v. Moore, supra.
Second, the defendant must show that counsel's deficient performance prejudiced his defense. This element requires a showing that the errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Strickland v. Washington, supra. The defendant must prove actual prejudice before relief will be granted. It is not sufficient for the defendant to show the error had some conceivable effect on the outcome of the proceedings. Rather, he must show that, but for counsel's unprofessional errors, there is a reasonable probability the outcome of the trial would have been different. Strickland v. Washington, supra; State v. Pratt, 26,862 (La.App.2d Cir.4/5/95), 653 So.2d 174.
A defendant making a claim of ineffective assistance of counsel must identify certain acts or omissions by counsel which led to the claim; general statements and conclusionary charges will not suffice. Strickland v. Washington, supra; Knighton v. Maggio, 740 F.2d 1344 (5th Cir. 1984); State v. O'Neal, 501 So.2d 920 (La. App. 2d Cir.), writ denied, 505 So.2d 1139 (1987).
The defendant claims that Natasha Mosley and Fedrekia Thomas witnessed him and the victim arguing prior to the murder. In support of this claim, the defendant submits a portion of the police report purporting to prove that these witnesses had information corroborating the defense theory of manslaughter.
The defendant takes the position that his trial counsel was ineffective because she failed to "adequately investigate and interview" these witnesses, who would have supported the defense of manslaughter. However, the defendant offers no proof that his trial counsel failed to "adequately investigate and interview" these witnesses. Moreover, the assessment of the attorney's performance requires her conduct be evaluated from counsel's perspective at the time of the occurrence, and there is nothing to show that defendant's trial counsel erred in her tactical decision not to bring these particular witnesses before the jury. The election to call or not to call a particular witness is a matter of trial strategy and is not, per se, evidence of ineffective assistance. State v. Dixon, *239 25,671 (La.App.2d Cir.1/19/94), 631 So.2d 94.
The defendant also makes the claim that his trial counsel "failed to adequately prepare for cross-examination" of Dr. George McCormick, the Caddo Parish coroner. The defendant offers no support for this claim, and such general statements and conclusionary charges will not suffice. Moreover, the defendant fails to show that, but for the trial counsel's alleged unprofessional errors, there is a reasonable probability the outcome of the trial would have been different.
Based upon our review of the entire record, we conclude that the defendant failed to prove that his trial counsel's performance was so deficient that he was deprived of his rights as guaranteed by the Sixth Amendment. These assignments are without merit.

Discovery
In his supplemental brief, the defendant also assigns as error the state's failure to disclose the coroner's investigative report. The defendant claims that the report exposes that the victim was schizophrenic, and as such, he might have been aggressive toward the defendant, thus supporting the defense of manslaughter. The defendant argues that the state's failure to disclose this report denied him his right to a fair trial.
The record reflects that, in response to the defendant's motion for discovery, the state produced the coroner's investigative report more than one year prior to trial. This assignment is without merit.
We have examined the record for error patent and found none.

CONCLUSION
For the foregoing reasons, the defendant's conviction and sentence are affirmed.
AFFIRMED.
NOTES
[1] The defendant argues that he should have been convicted of the lesser and included offense of manslaughter. However, the defendant failed to prove that the killing occurred under circumstances which would reduce his culpability to manslaughter. Thus, the jury could have determined beyond a reasonable doubt that the defendant was guilty of second degree murder.