MOORE, J.
Defendant was indicted by a grand jury for the First Degree Murder of Shacoria Remedies, a two-year-old child, in violation of La. R.S. 14:30. A unanimous jury convicted the defendant as charged, but could not reach a verdict on imposition of the death penalty. After denying defendant’s motion for post-verdict judgment of acquittal, the court imposed the mandatory sentence of life imprisonment without benefit of probation, parole, or suspension of sentence. Defendant now appeals, alleging that the evidence is insufficient to support the conviction of first degree murder, and the conviction was obtained in violation of defendant’s constitutional right to represent himself. Finding no merit in these claims, we affirm.
FACTS
At 4:30 p.m. on March 22, 2000, the Shreveport Fire Department responded to a 911 emergency medical call from the Haystack Apartments on Fern Avenue in Shreveport, Louisiana. The defendant, Willie Lee Douglas, II, made the 911 call. He reported to the dispatcher that two- *392 year-old Shacoria Remedies had fallen down the steps at the apartment complex and suffered a head injury. When the fire department emergency medical personnel arrived at the second floor apartment minutes after the call, Shacoria was lying on the floor. She did not respond to stimuli and her pupils were uneven, indicating to the EMS team that the child had suffered a head injury.
Shacoria was brought to LSU Medical Center Emergency Room at 4:47 p.m. with a closed head injury. She was moved to the Pediatric Intensive Care Unit where she was attended by Dr. Vidal, who subsequently reported that the child was brain dead.[1] Shacoria died the following day at approximately 5:15 p.m.
An autopsy was performed on the child the following day by forensic pathologist Steven C. Cogswell, M.D., Chief Deputy Coroner for Caddo Parish. Dr. Cogswell testified at trial in great detail regarding both the nature and severity of the injuries revealed by the autopsy. He concluded that the type and severity of injuries suffered by Shacoria were not consistent with injuries that could be sustained by a child falling down stairs. He stated that when a child falls down stairs, even an entire flight of stairs, it does not ordinarily result in significant injuries, because such falls are actually a series of relatively short nine or ten-inch falls. Hence, the natural injuries one would expect to see from such a fall by a small child would be relatively minor. Shacoria, however, suffered severe brain injuries, including a large subdural hema-toma covering the right hemisphere of the brain, severe brain swelling, and severe abdominal injuries, including a crushed liver and broken rib. The swelling of Shaco-ria’s brain compressed those parts of her brain that control respiration and heartbeat, interfering with their functioning and ultimately resulting in her death. Dr. Cogswell testified that the injuries were consistent with someone who had been beaten to death.
Beginning with the 911 call, the defendant consistently maintained that Shacoria sustained her injuries when she fell down the outside stairs at the apartment complex as he prepared to take her and the two other young children that he was baby-sitting to the pool to swim.[2] Defendant was asked several times by emergency workers, relatives, police and other investigators to recount the details of the accident. Although in every instance he described a series of falls down the apartment stairwell, there were variations in the details of the incident.
No one witnessed the incident described by the defendant. At trial, a neighbor testified that she was in her apartment near the base of the stairwell during the time Shacoria allegedly fell down the stairs. She testified that she did not hear or observe any event as described by the defendant.
The defense presented no witnesses or evidence during the guilt phase of the trial. The jury returned a unanimous verdict of guilty as charged of first degree murder. After deliberations during the penalty phase of the trial, the jury could not reach *393 a verdict. The trial court declared that the jury was hopelessly deadlocked. The defendant filed a motion for post-verdict judgment of acquittal, which was denied by the trial court. The defendant was sentenced to serve a term of life imprisonment without benefit of probation, parole or suspension of sentence. The defendant now appeals.
DISCUSSION
Assignment of Error Number One: The State failed to present sufficient evidence to support the verdict, a conviction of first degree murder.
The defendant argues that the case against him was based on circumstantial evidence and was therefore insufficient to support his conviction. He observes that, although the state presented the testimony of 13 persons, none were eyewitnesses to the events leading to the victim’s death. The defendant notes that he never wavered from his claim that the victim sustained her injuries when she fell down a flight of stairs. He contends that the testimony of the coroner who conducted the autopsy was insufficient to support his conviction of first degree murder. The defendant asserts that this evidence did not exclude every reasonable hypothesis of innocence as required by La. R.S. 15:438.
The question of sufficiency of the evidence is properly raised by a motion for post-verdict judgment of acquittal. La. C.Cr.P. art. 821; State v. Gay, 29,434 (La.App. 2 Cir. 06/18/97), 697 So.2d 642.
The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Cummings, 95-1377 (La.02/28/96), 668 So.2d 1132; State v. Hunter, 33,066 (La.App. 2 Cir. 09/27/00), 768 So.2d 687, writs denied, 2000-3070 (La.10/26/01), 799 So.2d 1150, 2001-2087 (La.4/19/02), 813 So.2d 424. This standard, now legislatively embodied in La.C.Cr.P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. State v. Robertson, 96-1048 (La.10/4/96), 680 So.2d 1165. The appellate court does not assess the credibility of witnesses or re-weigh evidence. State v. Smith, 94-3116 (La.10/16/95), 661 So.2d 442. A reviewing court accords great deference to a jury’s decision to accept or reject the testimony of a witness in whole or in part. State v. Gilliam, 36,118 (La.App. 2 Cir. 08/30/02), 827 So.2d 508.
The Jackson standard is applicable in cases involving both direct and circumstantial evidence. An appellate court reviewing the sufficiency of evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that the defendant was guilty of every essential element of the crime. State v. Sutton, 436 So.2d 471 (La.1983); State v. Owens, 30,903 (La.App. 2 Cir. 09/25/98), 719 So.2d 610, writ denied, 98-2723 (La.02/05/99), 737 So.2d 747.
For circumstantial evidence to sustain a conviction, upon assuming every fact to be proved that the evidence tends to prove, the evidence must exclude every reasonable hypothesis of innocence. State v. Bush, 31,710 (La.App. 2 Cir. 02/24/99), 733 So.2d 49, writ denied, 1999-1010 *394 (La.9/3/99), 747 So.2d 536, reconsideration denied, 1999-1010 (La.10/29/99), 748 So.2d 1156. See La. R.S. 15:438.
In this case, the defendant 'was charged with the first degree murder of a two-year-old child, in violation of La. R.S. 14:30 A(5), which provides in pertinent part:
A. First degree murder is the killing of a human being:
* * *
(5) When the offender has the specific intent to kill or to inflict great bodily harm upon a victim who is under the age of twelve or sixty-five years of age or older.
Specific intent is a state of mind and need not be proved as a fact; it may be inferred from the circumstances of the transaction and the actions of the defendant. State v. Graham, 420 So.2d 1126 (La.1982); State v. Fuller, 414 So.2d 306 (La.1982); State v. Doby, 540 So.2d 1008 (La.App. 2 Cir.), writ denied, 544 So.2d 398 (La.1989). Specific intent is that state of mind that exists when the circumstances indicate the offender actively desired the prescribed criminal consequences to follow his act. La, R.S. 14:10(1); State v. Lindsey, 543 So.2d 886 (La.1989), cert. denied, 494 U.S. 1074, 110 S.Ct. 1796, 108 L.Ed.2d 798 (1990); State v. McCray, 621 So.2d 94 (La.App. 2 Cir.1993).
The determination of whether the requisite intent is present in a criminal case is for the trier of fact. State v. Huizar, 414 So.2d 741 (La.1982); State v. Butler, 322 So.2d 189 (La.1975); State v. Dean, 528 So.2d 679 (La.App. 2 Cir.1988).
In State v. Morrison, 32,123 (La.App. 2 Cir. 07/22/99), 743 So.2d 232, writ denied, 1999-3514 (La.05/26/00), 762 So.2d 1103, this court held that the coroner’s testimony regarding the severity of a beating of victim’s head and facial wounds illustrated that the defendant had the requisite specific intent to kill or to inflict great bodily harm.
The defendant argues that his conviction was based on circumstantial evidence, and the state failed to meet its burden by excluding every reasonable hypothesis of innocence. The hypothesis of innocence in this case is defendant’s claim that the child sustained the injuries that caused her death by falling down the stairs.
The unrebutted testimony shows that the defendant was the only adult with the two-year-old victim at the time she sustained her injuries. Although the paramedics and fire department personnel who became involved in the incident and the police who investigated it testified that they were suspicious of defendant’s story, his behavior, and the variations in his story, it was the findings of Dr. Cogswell from the autopsy that provided the most compelling evidence of the offense.
At trial, Dr. Cogswell described the injuries in detail. Of the two primary groups of injuries sustained by the child, the most critical was the closed-head injury. There was a subdural hematoma, that is, a layer of blood outside the brain but inside the skull, that covered the right hemisphere of her brain. There were also other areas of bleeding at a deeper layer called the arachnoid membrane, and the brain itself was markedly swollen, and retinal hemorrhaging was present. Dr. Cogswell explained that since the skull is closed, the swelling of the brain compressed the parts of the brain at the brain stem that control heartbeat and respiration. As they became compressed, the electrical signals controlling these functions were shorted out, resulting in the death of the child.
The second group of injuries sustained by the child were in the abdominal region. Dr. Cogswell stated that Shacoria’s liver was crushed, which resulted in bleeding *395 that extended around the liver, the gallbladder, the pancreas, and the other organs in the upper part of the abdomen. There were two very small tears in the vena cava, a large blood vessel that returns blood from the lower part of the body through the liver back into the heart. The eleventh rib, the lowest rib one can feel on the body, was broken. The diaphragm showed a series of bruises matching the rib pattern of the child.
Dr. Cogswell testified that the forces that caused the subdural hematoma, in which the brain was torn from the lining (dura mater) attached to the inner side of the skull, are consistent with shaken baby syndrome or with shaking or forcefully hitting the child’s head against something immovable. The severity of the brain injuries were much greater than those that could have been caused by a fall down the stairs. The injuries to the head, he stated, were indicative of shaken baby syndrome.
Additionally, Dr. Cogswell examined the superficial scrapes on the child for the presence of sand, a component of the concrete risers of the stairwell. He testified that the examination yielded no evidence of sand which should have been present. He noted also that there were no scrapes on the elbows, back of the hands and knees that would be expected in a fall down concrete stairs.
Dr. Cogswell described external bruises on one arm and the chest of the child that were oval in shape and about the size of fingertips. Their location, size and shape were consistent with the pattern of fingertips normally seen in cases of someone who has been shaken or grabbed forcefully-
Dr. Cogswell testified that the child’s 11th rib was broken and the liver had been crushed against the spine. He opined that the rib was broken by the child’s rib cage being compressed or flattened by blunt force. The magnitude or severity of the injury was not consistent with a fall down a stairwell. The abdominal injuries, Dr. Cogswell stated, would have also been fatal. However, the head injury trumped that injury in taking the child’s life.
In concluding his testimony, Dr. Cogs-well testified that his unequivocal expert opinion was that the victim had been beaten to death.
We observe that Dr. Cogswell’s testimony regarding the nature and severity of the victim’s injuries was sufficient to support a finding of the defendant’s specific intent to kill. State v. Morrison, supra. Although the defendant never wavered in his claim that the victim sustained her injuries from a fall down a flight of stairs, the scenario he related varied, often significantly, with each telling of the story.
Our review of the appellate record reveals that the evidence, viewed in the light most favorable to the prosecution, is sufficient for a rational trier of fact to conclude this defendant’s guilt beyond a reasonable doubt. See Jackson v. Virginia, supra; State v. Cummings, supra; State v. Hunter, supra. Although there were no eyewitnesses to the crime, there was likewise no evidence to support defendant’s version of events that caused the child’s injuries and death. The fact that defendant was the only adult with the child when she was injured, the variations in defendant’s accounts of the fall down the stairs, his unusual behavior surrounding the event, the lack of medical evidence to corroborate his account of the fall down the stairs and the compelling forensic evidence indicating that the child was brutally handled and perhaps beaten to death support the jury’s verdict. The circumstantial evidence presented at trial in this case, viewed in a light most favorable to the prosecution, is sufficient for a rational trier of fact to *396 conclude this defendant’s guilt beyond a reasonable doubt. This court does not assess the credibility of witnesses or reweigh evidence. State v. Smith, supra. Defendant’s assignment of error is therefore without merit.
Assignment of Error Number Two: Defendant’s conviction was obtained in violation of his constitutional right to self-representation.
On March 13, 2002, defendant filed a pro se motion to appoint new counsel, alleging that his counsel from the Indigent Defenders’ Office, David McClatchey, was incompetent, unprepared and had a conflict of interest. Defendant filed a similar pro se motion on April 2, 2002, again alleging that his counsel was incompetent and unprepared and that he would be unable to obtain a fair trial. Defendant argued in the motion that the Indigent Defender’s Office was over-burdened and could not adequately handle his case.
On June 24, 2002, the defendant filed a pro se motion to suppress evidence. The defendant addressed a letter attached to that motion to the trial court, asking that his trial be “waived”[3] and that he be allowed to represent himself. He expressed distrust and dissatisfaction with his attorney, David McClatchey, of the Indigent Defender Board.
On the date of the hearing, June 27, 2002, Mr. McClatchey filed a motion to be relieved as counsel of record. McClat-chey’s motion was based on defendant’s pro se motion for appointment of new counsel alleging that McClatchey was incompetent, ineffective, unprepared and failed to properly investigate evidence. McClatchey asserted that he could not both represent the defendant and defend himself against the defendant’s allegations.
At a hearing held on June 27, 2002, the matter was argued before the trial court. McClatchey argued for his motion that the Indigent Defender Board be relieved as counsel, stating that in light of the complaints of defendant, he had become so perturbed that he could not be effective in this case. The court denied his motion to be relieved as counsel for the defendant.
Next, the court took up defendant’s motion to suppress, but the court’s attention was immediately turned to defendant’s attached letter in which he requested that he represent himself. Noting that the letter was not a motion, the court allowed the defendant to speak. The defendant immediately launched a verbal assault on the quality of his counsel’s representation and told the court he would not accept their representation. When he attempted to leave counsel’s table, the bailiff stopped him. When defendant then began using foul language, he was removed from the courtroom. The court denied defendant’s request to represent himself, and Mr. McClatchey objected to the ruling. The state requested a more extensive colloquy on the matter, but the court noted that the defendant had not filed a motion, but only attached a letter to his motion to suppress, in which he indicated he wanted to represent himself.
After discussion with counsel and the state, the court allowed Mr. McClatchey to make a motion on behalf of defendant to allow the defendant to represent himself. Then the court allowed the defendant to address the court, at which time he expressed his desire to represent himself based upon his belief that his counsel had done nothing in developing a defense. The *397 court then declined to have a colloquy with the defendant about the matter.
The state sought a supervisory writ of review from this court. We granted the writ by order No. 36,600-KW, signed 6/28/02, vacated the trial court’s ruling denying the defendant’s motion to represent himself and remanded for a hearing to determine whether the defendant was competent to waive counsel and was voluntarily exercising his informed free will. See State v. Santos, 99-1897 (La.09/15/00), 770 So.2d 319. In the writ opinion we noted that “[a]n accused has the right to choose between his right to counsel and his right to self-representation.” State v. Bridgewater, 2000-1529 (La.01/15/02), 823 So.2d 877, cert. denied, 537 U.S. 1227, 123 S.Ct. 1266, 154 L.Ed.2d 1089 (2003). The trial court must conduct a colloquy in accordance with Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975).
On July 18, 2002, in accordance with our instructions, the trial court held a hearing on the matter. At the hearing, the trial court inquired whether the defendant still wished to waive counsel. The following colloquy transpired:
The Court: ... Mr. Douglas, the Court had previously denied your motion for new counsel and has also subsequently denied the defense counsels’ motion to be relieved as counsel and further the Court has denied the oral motion for the defendant to represent himself. And, Mr. Douglas, at this juncture the Court is going to ask you do you still wish to waive counsel?
The Defendant: Yes.
The Court: You want to give up being represented by a lawyer and represent yourself?
The Defendant: I would like to waive counsel and be represented by another lawyer.
The Court: Let me ask you this question. The Court has refused to relieve the ID Office from representing you and the Court observes that the lawyers for the ID have endeavored to represent you with the (sic) zeal and with what the Court believes is the appropriate representation. What is your reason for not wanting the ID Office to represent you? Is it these lawyers or is it the ID Office in general? I need to know the reasons so that I can make an informed decision about it.
The Defendant: First of all, the ID Office — the first one is the ID Office filed a motion they wanted to get off my case anyway. Secondly, the ID Office have (sic) more clients besides me and they don’t have the proper stance for a capital case that I’m on and the proper investigation. Thirdly, the evidence that has been brought up Monday when we were set for trial should have already been in the court since the last ID lawyer I had has filed that motion but all of (sic) sudden it just come (sic) out of the blue now. And I felt like the Indigent Defender Board should have had that from the start. Fourthly, I learned that the Indigent Defender Board cannot do the case that I’m on with their credibility or not (sic). I’m not saying they’re dumb, I’m just saying the credibility and knowledge that they have is (sic) not fit to my charge.
The Court: Let me ask you this question just so we can definitely resolve this issue. You previously asked the Court to relieve the ID Office and appoint new counsel and after I didn’t do that you said you wanted to represent yourself. You really don’t want to represent yourself, you really want to have lawyers represent you?
*398 The Defendant: Yes, ma am.
The Court: So you have no intentions of waiving counsel, you just at this juncture feel as though you don’t want the ID office representing you?
The Defendant: Yes, ma'am.
The Court: And you understand that you do have a right to counsel and if you’re not able to afford counsel the Court has to appoint counsel and that’s what the Court has done in this case, appointed the ID Office, you understand that?
The Defendant: Yes, ma'am.
After giving the attorneys for both the defense and the state a chance to address the issue and the defendant’s complaints and concerns regarding the quality of representation, the trial court maintained the appointment of the ID Office as the defendant’s court-appointed counsel.
The defendant argues that he made an unequivocal request to represent himself, which was denied by the trial court. He contends that the trial court’s only inquiry should have been the defendant’s competency to waive counsel and the voluntariness in exercising his informed free will.
In State v. Santos, supra at 321, the Louisiana Supreme Court stated that “[a] trial judge confronted with an accused’s unequivocal request to represent himself need determine only whether the accused is competent to waive counsel and is ‘voluntarily exercising his informed free will.’ ” (quoting Faretta, supra). (Emphasis supplied).
In granting the state’s writ application on the matter of self-representation, we vacated the trial court’s denial of defendant’s request to represent himself and remanded to the trial court to conduct a hearing on whether the defendant was competent to waive counsel and voluntarily exercise his informed free will. This rul-mg was based upon what appeared at the time to be the defendant’s unequivocal desire to represent himself. However, the transcript of the subsequent July 18, 2002 hearing held in accordance with that order shows that the trial court determined that the defendant did not wish to represent himself. Instead, he simply wished to obtain new counsel. In fact, the defendant unequivocally retracted his previous request to represent himself. In view of this retraction, further inquiry regarding whether the defendant was competent to waive counsel was unnecessary.
On this record, it cannot be said that the defendant’s claim regarding self-representation has merit.
CONCLUSION
For the foregoing reasons, the conviction and sentence of the defendant are affirmed.
CONVICTION AND SENTENCE AFFIRMED.

. See Coroner's Report. Rp. 123-133 in record filed July 11, 2000 in response to defendant's discovery request. The written report by Dr. Cogswell does not appear to have been offered into evidence with the autopsy photographs, probably because Dr. Cogswell’s very detailed testimony covered all relevant matters covered therein.

. Defendant and Shacoria’s mother, Gwendolyn Remedies, were living in the apartment with Anita Mathews. The other children were the children of Anita Mathews, ages two and four.

. From the context in which the defendant used the word “waive” in this letter, it appears that the defendant was requesting a continuance within which to better prepare for trial.