697 So.2d 642 (1997)
STATE of Louisiana, Appellee,
v.
Roderick L. GAY, Appellant.
No. 29434-KA.
Court of Appeal of Louisiana, Second Circuit.
June 18, 1997.
*644 Larry Johnson, Stephen Glassell, Shreveport, for Appellant.
Richard Ieyoub, Attorney General, Paul J. Carmouche, District Attorney, Theresa Bloomfield, Michael Pitman, Assistant District Attorneys, for Appellee.
Before BROWN, WILLIAMS and GASKINS, JJ.
GASKINS, Judge.
The defendant, Roderick L. Gay, was tried by jury and found guilty of first degree murder. He was sentenced to life imprisonment at hard labor without benefit of probation, parole or suspension of sentence. He now appeals his conviction. For the following reasons, the conviction and sentence are affirmed.

FACTS
On the evening of March 24, 1995, the victim, David Morris, drove to his cousin's house on Audrey Lane in Shreveport. He was accompanied by his wife, Dorothy and their twelve year old daughter, Monique. In addition to their other jobs, the Morrises owned a business called "Dot's Boutique," a retail clothing enterprise they operated from the trunk of their car. When they arrived on Audrey Lane, Mr. Morris got out of the car to show his cousin, Marvin Young, the clothes in the trunk.
Several other people approached the car and began looking at the clothing. Mrs. Morris got out to help her husband with the crowd. Suddenly, a blue car with a yellow door pulled up in the driveway. The two men inside were the defendant and Jimmy Spearman. The men got out of the blue car, walked up to the victim's car and looked at the clothes. The defendant walked back to the blue car but then returned to the victim's car. The defendant pointed a handgun at Mr. Morris, who was folding clothes in the trunk, and said "Give me all your shit." Mr. Morris turned and moved toward the defendant. The defendant shot Mr. Morris. The victim either fell onto the defendant or attempted to struggle with him. The defendant shot Mr. Morris a second time and the victim fell to the ground. Mrs. Morris and her daughter escaped the scene, but were able to observe the defendant's further actions. *645 As the victim lay on the ground, the defendant shot him in the head, killing him. The defendant took some clothes from the victim's car, got back into the blue car, and the two men left.
Witnesses at the scene who knew the defendant and Jimmy Spearman told police that the defendant shot the victim, took clothes from the victim's trunk and then fled the scene with Jimmy Spearman, in Spearman's vehicle. Officers obtained a warrant and searched Jimmy Spearman's residence later that evening, finding numerous items of new clothing which were identified by Mrs. Morris as the property stolen from her trunk. Witnesses, including Dorothy and Monique Morris, viewed a photographic line up and identified the defendant as the person who shot the victim. The defendant turned himself in the day after the shooting.
The defendant, who has a prior felony drug conviction, admitted that he was at the scene of the crime and struggled with the victim, but said that the gun went off during the struggle. He testified that he had been drinking heavily and smoking "primos" which are marijuana cigarettes laced with cocaine. According to the defendant, he and Jimmy Spearman went to Marvin Young's house to buy drugs. The defendant said that he had given his money to Spearman to buy drugs from Young, but when Spearman did not return with his change, the defendant became angry. The defendant said that, in his intoxicated condition, he took out his anger on the victim by "tussling" with him, but did not intend to kill or rob him. The defendant denied that he took clothes from the trunk of the victim's car. He testified that his mother came and got him from Spearman's house after the shooting and that he turned himself in the next day at Caddo Correctional Center.
The defendant was charged with first degree murder and the prosecution sought the death penalty. The case was tried in March 1996. The jury convicted the defendant of first degree murder, but declined to impose the death penalty. The defendant was sentenced to serve life in prison without benefit of parole, probation or suspension of sentence. The defendant appealed.

MISTRIAL
The defendant argues that the trial court erred in failing to grant a mistrial under La.C.Cr.P. art. 770(2) due to a police witness' reference to a "mug shot" of the defendant in the police files. The defendant contends that this reference constituted an impermissible reference to other crimes committed by him and that a mistrial was the only acceptable remedy. This argument is without merit.
Shreveport Police Officer Willie Shaw was the lead investigator in this case. Officer Shaw testified that he interviewed Dorothy and Monique Morris, Marvin Young and Lorenzo Brown (a bystander) in connection with the investigation. Mr. Brown had seen the events and knew the defendant by name so the officer developed the defendant as a suspect. The officer then prepared a photo lineup to show the other witnesses. The following testimony, during the state's case in chief, is the subject of this assignment of error:
Q [Prosecutor]: How did you prepare that lineup?
A [Officer Shaw]: What I do is get a suspect name identified by name. I go over and get a photograph of him if he have one in our SPD mug file. And I take five other like or similar photos or similar features and I put them all in a little folder like this and number them one through six. And at that time it's prepared to show to any witnesses.
The defendant objected to this testimony and requested a mistrial, arguing that the officer's testimony about a picture from the "SPD mug file" was an impermissible reference to other crimes evidence. When the court refused to declare a mistrial, but offered to admonish the jury to disregard the remark, defense counsel declined, indicating that an admonishment would "simply make matters worse." On appeal, defendant argues that the officer's answer, while it "may very well have been non-responsive," "nevertheless had an effect on the jury which could not have been cured by anything other than a mistrial."
*646 The defendant argues that a mistrial is required under La.C.Cr.P. art. 770(2), which provides, in pertinent part:
Upon motion of a defendant, a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the judge, district attorney, or a court official, during the trial or in argument, refers directly or indirectly to:
(2) Another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible.
The defendant erroneously relies upon La. C.Cr.P. art. 770(2) in support of his argument that a mistrial is mandatory in this case. The comment in question was made by a police officer, not the judge, district attorney or other court official. It is well settled that a police officer is not a court official under La.C.Cr.P. art. 770. In State v. Nuccio, 454 So.2d 93 (La.1984), the Louisiana Supreme Court said:
This court has held that a police officer's unsolicited, unresponsive reference to another crime alleged to have been committed by a defendant is not the comment of a court official under C.Cr.P. 770(2), but such an officer will be held to the same standard if his answers show a pattern of unresponsiveness or improper intent. State v. Harris, 383 So.2d 1, 9 (La.1980); State v. Schwartz, 354 So.2d 1332, 1333 n. 2 (La.1978); see also State v. Perry, 420 So.2d 139, 146 (La.1982) ("... neither a state witness nor a deputy sheriff is a `court official'; therefore, [C.Cr.P.] art. 770 does not apply....").
....
The comment of a police officer, though, will be viewed with considerable concern as to its effect on the fairness of the trial, but the decision is initially within the sound discretion of the trial judge. State v. Douglas, 389 So.2d 1263, 1266 (La.1980). Absent a clear showing of abuse of the trial court's discretion, this court will not upset a trial court's ruling on the matter.
Similarly, in State v. Jones, 332 So.2d 466 (La.1976), a police officer testified at trial that mug shots on file with the police department were used to identify the defendant. The defendant moved for a mistrial based upon La.C.Cr.P. art. 770. The Louisiana Supreme Court reiterated that La.C.Cr.P. art. 771 was the applicable article, not art. 770. The court then found no bad faith on the part of the prosecution or the police officer and found that any prejudice to the defendant was cured by an admonition by the trial court. Therefore, a mistrial was not required.
Further, in State v. Powell, 598 So.2d 454 (La.App. 2d Cir.1992), in response to the prosecution's question regarding the composition of a photo lineup, a detective stated that he obtained a picture of the defendant from the identification section of the police department and the number on the picture corresponded with the defendant's arrest record. The defendant's motion for a mistrial was denied, but an admonition was given by the trial court. This court affirmed, stating that "arguably the fact that the police have the defendant's photo on file could be understood as evidence of a prior arrest or conviction. However, courts have consistently held that any prejudice from the use of a file photo or `mug shot' is cured by an appropriate admonition." See State v. Barry, 428 So.2d 521 (La.App. 2d Cir.1983); State v. Wilson, 96-46 (La.App. 3d Cir. 5/8/96), 677 So.2d 471. See also State v. Babin, 336 So.2d 780 (La.1976), where the defense refused the trial court's admonition.
In the instant case, the police officer did not flatly state that he obtained the defendant's photo from police files. When asked by the prosecution generally how he prepared a photo lineup, the answer was also general. Officer Shaw described his usual procedure for creating a lineup, without referring to this defendant. Officer Shaw's statement "I go over and get a photograph [of the suspect] if he have one [sic] in our SPD mug file" does not tell the jury whether this particular defendant actually had a photo on file.
Further, there is no showing that the comment was deliberately elicited by the prosecutor. Questions, such as that posed by the prosecution in this case, about how a lineup was created, are generally designed to elicit responses showing that the lineup is not *647 suggestive and that the resulting identification is reliable. The prosecutor's question in this case is sufficiently open-ended that it does not suggest to the witness that the state wants to know if the defendant has a criminal record. In this case, the officer's comment did not state that the defendant had a mug shot on file or that he had a prior arrest. As in State v. Powell, supra, the comment linking the photo to the defendant's prior arrest was indirect at best. Further, as in State v. Babin, supra, the trial court offered to admonish the jury, but the defendant refused the admonition.
We also note that the defendant ultimately took the stand and admitted that he had a prior criminal record. Considering the nonresponsive generic statement of the police officer and the absence of proof that the comment was deliberately elicited, the defendant has failed to show any prejudice from the remark. Under the circumstances presented in this case, we find that the trial court did not err in denying the defendant's request for a mistrial.

ADMISSIBILITY OF PHOTOGRAPHS
The defendant argues that the trial court erred in admitting into evidence photographs of the victim at the scene of the crime, contending that the photos were gruesome and more prejudicial than probative. This argument is without merit.
Officer Willie Shaw of the Shreveport Police Department arrived at the scene shortly after the shooting and took a series of photos of the victim and his surroundings. Four of these photos comprise State's Exhibit 3(S-3). These four color 8" by 12" photos show the victim lying in a pool of blood on the street with a view of the bullet wounds to his face and torso.
The defendant objected to the introduction of these photos into evidence on the grounds that they were excessively gruesome and more prejudicial than probative. In response, the state argued that the photos corroborate other evidence establishing the cause of death and show the identity of the victim, the location of the body, the manner of death, the defendant's specific intent to kill the victim, the severity of the wounds and the probable order in which the wounds were inflicted. The state also argued that these photos were carefully selected from the group of photos taken to support the state's theory of the case. The court allowed the photos into evidence, stating "The court also has concern about the gruesome nature of the pictures. However, the Court feels that the probative value will outweigh the gruesome nature of the photograph."
On appeal, the defendant argues that the photos were unnecessary to the state's case and merely served to inflame the passions of the jury against the defendant. The state disagrees, arguing that the photos were necessary to corroborate expert opinions that the defendant deliberately shot the victim to death.
Photographs are generally admissible if they illustrate any fact, shed light upon any issue in the case, or serve to describe the person, thing or place depicted. State v. Landry, 388 So.2d 699 (La.1980), cert. denied, 450 U.S. 968, 101 S.Ct. 1487, 67 L.Ed.2d 618 (1981); State v. Perow, 616 So.2d 1336 (La.App. 2d Cir.1993), writ denied, 623 So.2d 1303 (La.1993).
The test for admissibility of gruesome photographs is whether their probative value outweighs any prejudicial effect which may result from the display to the jury. State v. Eaton, 524 So.2d 1194 (La.1988), cert. denied, 488 U.S. 1019, 109 S.Ct. 818, 102 L.Ed.2d 807, rehearing denied, 489 U.S. 1061, 109 S.Ct. 1332, 103 L.Ed.2d 600 (1989). Photographs of a victim's body depicting fatal wounds are generally relevant in proving corpus delicti; establishing the victim's identity and the location, severity, and number of wounds; and corroborating other evidence of the manner in which the death occurred. State v. Eaton, supra. The trial court has great discretion in admitting photographs into evidence. Absent an abuse of that discretion, the ruling will not be disturbed. State v. Perow, supra.
The defendant's theory of the case was that the shooting took place during a struggle after the victim produced a weapon and *648 tried to shoot the defendant. The defendant said:
I didn't know he was shot. I slung him down and he just didn't get up.
This is obviously an attempt to show that the defendant did not have the specific intent to kill or commit great bodily harm upon the victim.
However, the state, through the testimony of blood stain evidence expert Officer Mike Rogers, of the Shreveport Police Department, argued to the jury that the wound to the victim's head could not have been inflicted in the way the defendant claimed. Officer Rogers testified that he reviewed the photos in question and interviewed other officers who responded to the crime scene. From this data, along with a review of the coroner's report and crime lab reports, Officer Rogers came to the conclusion that the victim was already lying in the street when the final shot was fired. Notably, Officer Rogers was unable to make this determination from the autopsy photos alone, because the blood had been cleared away in those photos. Only with the aid of the photos in S-3 could the expert make this determination.
Therefore, the photos show that the defendant's version of events varies from the physical evidence. Moreover, they corroborate the testimony of Dorothy Morris, who testified that the final shot was fired after her husband was on the ground. Because the photos helped the jury resolve an issue of conflicting testimony bearing directly upon the defendant's culpability, the trial court did not err in admitting them over the defendant's objection.

CHARACTER OF THE HOUSE
The defendant argues that the trial court erred by refusing to allow evidence that the house where this crime occurred was a known "crack house." The defendant argues that the trial court should have permitted him to introduce evidence showing that Marvin Young's house was known as a "crack house" and that the defendant went there to buy drugs, not to commit an armed robbery. This argument is without merit.
During his testimony, the defendant implied that the victim either was aware of or part of a drug deal between himself, Jimmy Spearman and Marvin Young. Earlier, defense counsel tried to bolster this theory by showing that Marvin Young's house was known to be a place where one could buy drugs and that a police raid about 8½ months prior to this shooting led to a felony drug conviction for Young and the seizure of paraphernalia, cash and weapons associated with Young's illegal drug sales.
The trial court ruled that evidence about prior drug sales at the Young residence was "improper" but permitted the defendant to ask Mrs. Morris about possible drug activities on the night of the shooting. Mrs. Morris flatly denied that her husband had anything to do with drugs or that others were buying drugs around him when he was shot.
The court permitted the defendant to proffer the challenged evidence into the record. The first proffer was Lorenzo Brown, an eyewitness to the shooting. Mr. Brown testified that he had seen the "jump-out boys" execute a search warrant at Marvin Young's house on July 8, 1994. The witness knew that Young had a drug conviction as a result of the raid, but did not know what items were seized. Brown testified that as far as he knew, the house in question was not used as a base for distributing cocaine.
The second proffer was Marvin Young. Mr. Young admitted to a conviction for possession of cocaine with intent to distribute which resulted from the July 8, 1994 raid by the Caddo Parish Sheriff's Office. The witness also testified that a set of scales was found in his bedroom and that cocaine, money and guns were seized from the residence. After hearing the testimony and arguments of counsel, the court ruled, over defendant's objection, that the proffer was irrelevant and immaterial and thus not admissible.
The third proffer was Officer Shaw, who had no knowledge of the execution of the warrant or the sale of drugs from the Young home.
On appeal, the defendant urges that the trial court erred in excluding this evidence because:

*649 It was absolutely critical that this information be made available to the jury as it bears directly on the motive of the defendant for his being present at the residence to buy drugs and not to commit armed robbery.
The defendant argues generally that this evidentiary ruling unconstitutionally curtailed his right to present a defense. The state argues that the trial court was correct because "there was never a claim nor an indication that the victim had any involvement with illegal drug activities" and that the defendant's motive for going to the house was irrelevant to his intent to kill the victim during the armed robbery.
"Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. La. C.E. art. 401. All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, the Constitution of Louisiana, this Code of Evidence, or other legislation. Evidence which is not relevant is not admissible. La. C.E. art. 402. Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or waste of time. La. C.E. art. 403.
A trial judge is vested with wide discretion in determining relevancy, and his ruling will not be disturbed on appeal in the absence of abuse. State v. Plater, 26,252 (La.App.2d Cir. 9/21/94), 643 So.2d 313, writ denied, 94-2608 (La.02/03/95), 649 So.2d 402. Constitutional guarantees do not assure the defendant the right to the admissibility of any type of evidence, only that which is deemed trustworthy and has probative value. State v. Governor, 331 So.2d 443 (La.1976); State v. Scott, 588 So.2d 1365, (La.App. 2d Cir.1991), writ denied, 592 So.2d 1298 (La. 1992).
Defendant cites State v. Vale, 95-0577, and State v. Neidhardt, 95-1230 (La.01/26/96), 666 So.2d 1070, in support of his argument. In these consolidated cases, three persons (Vale, Neidhardt and Bergeron) were charged with possession of heroin with the intent to distribute. However, in exchange for the dismissal of that charge, Bergeron agreed to testify against the other two. Before trial, Bergeron was arrested on a weapons charge. About two weeks later, Bergeron suddenly remembered that Vale had sold him heroin in the past. The defendant was not allowed to cross-examine Bergeron about the possibility of a "deal" concerning the dismissal of the firearms charge in exchange for his testimony. The court of appeal affirmed the conviction but the Louisiana Supreme Court reversed, holding that the curtailment of cross-examination impermissibly denied defendant his right to full cross-examination.
The other case cited by defendant is State v. George, 95-0110 (La.10/16/95), 661 So.2d 975. In George, the state, through a detective, introduced evidence on rebuttal that the defendant's brother had informed the police about defendant's drug dealing. This evidence was contrary to the prior testimony of the defendant's brother, but the trial court did not permit the defendant to recall his brother to counter the new allegation. The supreme court held that this refusal was an impermissible curtailment of the defendant's right to impeach the state's witnesses.
These cases are inapposite to the case sub judice. Of the witnesses who gave proffered testimony, only Marvin Young had prior convictions (two, both for drugs), and the jury heard that fact. There was no suggestion that his testimony was made in exchange for a deal, and Mr. Young did not see the shots fired; he only saw the defendant taking clothes. Moreover, the court allowed the defendant to ask Mr. Young whether or not he was engaged in the sale of drugs to the defendant or Spearman; the witness said that he was not.
Considering all this testimony, and particularly that Young had two prior drug convictions, evidence about the execution of the warrant and the resulting seizures would primarily have been evidence barred by La. C.E. art. 609.1(C), which provides:
*650 In a criminal case, every witness by testifying subjects himself to examination relative to his criminal convictions, subject to limitations set forth below.
Ordinarily, only the fact of a conviction, the name of the offense, the date thereof, and the sentence imposed is admissible. However, details of the offense may become admissible to show the true nature of the offense:
(1) When the witness has denied the conviction or denied recollection thereof;
(2) When the witness has testified to exculpatory facts or circumstances surrounding the conviction; or
(3) When the probative value thereof outweighs the danger of unfair prejudice, confusion of the issues, or misleading the jury.
Because Young's credibility was impeached by the fact of the two convictions, evidence about the raid could only tend to show why the defendant went to the Young residence that night. Even in the proffered testimony, there is no suggestion that the victim had anything to do with drug sales; the only evidence in that regard is the defendant's own self-serving testimony. Without a showing that the victim had something to do with the drug sales from the Young residence, evidence about those sales tends to confuse the issue of the defendant's intent to kill with his motive for going to the house (to buy drugs). This motive is irrelevant to the murder charge. Therefore, under La. C.E. art. 403 and art. 609.1(C), evidence about the raid on the house tended simply to confuse without proving a fact at issue and was properly excluded. See also State v. Hartman, 388 So.2d 688 (La.1980), in which the reputation of a place was held to be irrelevant to a claim of self defense in a murder prosecution.

SUFFICIENCY OF THE EVIDENCE
The defendant urges that the evidence against him is insufficient to sustain a conviction for first degree murder. Specifically, he argues that the state failed to prove that the defendant possessed the requisite intent. This argument is without merit.
The defendant raised the issue of sufficiency of the evidence in the trial court in a motion for new trial, alleging that the verdict was contrary to the law and the evidence. However, the denial of a motion for new trial based upon La.C.Cr.P. art. 851(1) is not subject to review on appeal. State v. Bartley, 329 So.2d 431 (La.1976); State v. Demery, 28,396 (La.App.2d Cir. 8/21/96), 679 So.2d 518. The question of sufficiency is properly raised by a motion for post judgment verdict of acquittal. La. C.Cr.P. art. 821; State v. Edwards, 25,963 (La.App.2d Cir. 5/4/94), 637 So.2d 600. Since the subject of this assignment is sufficiency of the evidence and this is a constitutional issue, we will treat it as though it has been properly framed under La.C.Cr.P. art 821. State v. Demery, supra.
Under Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), the proper standard of appellate review for a sufficiency of evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Bellamy, 599 So.2d 326 (La. App. 2d Cir.), writ denied, 605 So.2d 1089 (1992).
La. R.S. 14:30 provides, in pertinent part:
First degree murder is the killing of a human being:
When the offender has specific intent to kill or to inflict great bodily harm and is engaged in the perpetration or attempted perpetration of ... armed robbery ... first degree robbery, or simple robbery.
The defendant argues that:
[T]he required criminal intent was missing in view of the fact that the defendant had gone to the residence of 2360 Audrey Lane to purchase drugs, and not to rob or kill anyone.
He also states that the killing was a result of an argument between himself and the victim and that this is "a classic manslaughter situation."
Specific criminal intent is defined as "that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences *651 to follow his act or failure to act." La. R.S. 14:10(1). Specific intent is a state of mind and need not be proved as a fact; it may be inferred from the circumstances of the transaction and the actions of the defendant. State v. Graham, 420 So.2d 1126 (La. 1982); State v. Fuller, 414 So.2d 306 (La. 1982); State v. Knowles, 598 So.2d 430 (La. App. 2d Cir.1992); State v. Doby, 540 So.2d 1008 (La.App. 2d Cir.1989), writ denied, 544 So.2d 398 (La.1989).
The determination of whether the requisite intent is present in a criminal case is for the trier of fact. State v. Huizar, 414 So.2d 741 (La. 1982); State v. Knowles, supra. In reviewing the correctness of such a determination, an appellate court should review the evidence in a light most favorable to the prosecution and must determine if the evidence is sufficient to convince a reasonable trier of fact of the guilt of the defendant beyond a reasonable doubt as to every element of the offense. Jackson v. Virginia, supra; State v. Huizar, supra; State v. Knowles, supra.
The intent that is relevant for purposes of La. R.S. 14:30, is the offender's specific intent to kill the victim during, in this case, an armed robbery. Why the defendant happened to come to the place where the killing occurred is not the focus of the inquiry. All that is necessary is that the defendant form the specific intent to kill or inflict great bodily harm for an instant when committing the crime. State v. Williamson, 27,871 (La.App.2d Cir. 4/3/96), 671 So.2d 1208, 1211, writ denied 96-1143 (La.10/04/96), 679 So.2d 1380. The discharge of a firearm at close range and aimed at a person is indicative of a specific intent to kill or inflict great bodily harm upon that person. State v. Johnson, 27,522 (La.App.2d Cir. 12/6/95), 665 So.2d 1237.
This court's authority to review questions of fact in a criminal case is limited to the sufficiency-of-the-evidence evaluation under Jackson v. Virginia, supra, and does not extend to credibility determinations made by the trier of fact. La. Const. art. 5, § 5(C); State v. Rogers, 494 So.2d 1251 (La.App. 2d Cir.1986), writ denied, 499 So.2d 83 (La. 1987). A reviewing court accords great deference to a jury's decision to accept or reject the testimony of a witness in whole or in part. State v. Rogers, supra.
The evidence amply demonstrates that, armed with a gun, the defendant attempted to rob the victim and when the victim resisted, the defendant shot him three times. Several witnesses testified that the defendant pointed a handgun at the victim and said "Give me all your shit." Defendant's actions and words unmistakably conveyed his intent to commit an armed robbery. When the victim either would not cooperate or did not move fast enough, the defendant shot him. A second gunshot wound was inflicted by the defendant when the victim fell onto the defendant or attempted to struggle with him. Finally, when the victim lay on the ground, helpless, the testimony and evidence show that the defendant aimed and fired his weapon at the victim's head. Then, as the victim lay in the street, the defendant took clothes from the victim's car. Under the circumstances, the jury could reasonably have found that the defendant possessed the requisite specific intent to kill or inflict great bodily harm upon the victim during the course of an armed robbery. In light of this evidence, the defendant's motive in initially coming to the scene is not relevant.

CONCLUSION
For the reasons stated above, the conviction and sentence of the defendant, Roderick L. Gay, are affirmed.
AFFIRMED.