771 So.2d 837 (2000)
STATE of Louisiana, Appellee,
v.
Angelo DAVENPORT, Appellant.
No. 33,961-KA.
Court of Appeal of Louisiana, Second Circuit.
November 1, 2000.
*840 Walter F. Clawson, Shreveport, McKeithen & Johnson by Ginger W. Johnson, Shreveport, Samuel P. Love, Jr., Shreveport, Counsel for Appellant.
Richard Ieyoub, Attorney General, Paul J. Carmouche, District Attorney, Catherine M. Estopinal, Edwin L. Blewer, III, Assistant District Attorneys, Counsel for Appellee.
Before CARAWAY, PEATROSS and KOSTELKA, JJ.
KOSTELKA, J.
After Angelo Davenport ("Davenport") was convicted by a jury, as charged, of aggravated criminal damage to property, La. R.S. 14:55, he was adjudicated a fourth felony habitual offender and sentenced to mandatory life imprisonment. Davenport now appeals his conviction and sentence. We affirm.

FACTS
On March 24, 1997, Davenport's then girlfriend, Carolyn Gilliam ("Carolyn"), became upset with Davenport who had been out of prison for approximately a week because he had taken her gray Ford Thunderbird ostensibly to search for a job.[1] Visibly upset over Davenport's failure to return the car, Carolyn went to the home *841 of her mother, Carrie Hill ("Hill"), at 1936 Legardy Street in Shreveport. She asked Hill to give her the handgun she kept there. Hill initially complied with Carolyn's request but then took the gun back and placed it in her apron pocket. Carolyn eventually wrested the gun back from Hill. In an effort to calm Carolyn down, Hill called to her granddaughter, Carolyn's niece, Tonnette Webb ("Webb"), who lived nearby to come talk to Carolyn.
Carolyn eventually located Davenport by telephone at a neighbor's house and asked him to pick her up at Hill's house. In response to the phone call, Davenport came to Hill's home and pulled the car to the side of Legardy Street, perpendicular to the driveway which is located on the right side of Hill's brick dwelling. The front door of the house is located to the left of the driveway and in the middle of the house which faces Legardy Street. The door enters into the living room of the house and the adjoining kitchen. A large window is located to the right of the front door. As Davenport pulled up to the house, the three women were standing outside. Carolyn ordered Davenport out of the car but then began to fire the hand-gun at him. When Carolyn stopped firing, the women immediately went into the house through the front door while Davenport got back into the vehicle. Hill and Charlie Johnson ("Johnson"), a next-door neighbor, then saw Davenport driving the car up the driveway toward the front door at a high rate of speed. Davenport rammed the car into the brick house in an area slightly to the right of the front door. None of the three women were injured. Davenport fled the scene and was later arrested.

DISCUSSION

Sufficiency of the Evidence
Even with Davenport's remaining claims, it is appropriate that we first address his sufficiency-of-the-evidence complaint. State v. Hearold, 603 So.2d 731 (La.1992). The question of sufficiency of the evidence is properly raised by a motion for post verdict judgment of acquittal. La. C.Cr.P. art. 821; State v. Gay, 29,434 (La. App.2d Cir.06/18/97), 697 So.2d 642. The record shows that Davenport raised the issue of sufficiency of the evidence in the trial court in a motion for new trial, alleging that the verdict was contrary to the law and the evidence. However, the denial of a motion for new trial based upon La. C.Cr.P. art. 851(1) is not subject to review on appeal. Gay, supra. Nevertheless, this court has addressed sufficiency of the evidence claims even when raised by motion for new trial. Gay, supra; State v. Barnes, 28,835 (La.App.2d Cir.12/11/96), 685 So.2d 1148.
Specifically, Davenport argues that the evidence presented at trial is insufficient to convict him of aggravated criminal damage to property because the state failed to prove that he possessed the requisite criminal intent to damage Hill's house.
Under Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), the proper standard of appellate review for a sufficiency of evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Bosley, 29,253 (La.App.2d Cir.04/02/97), 691 So.2d 347, writ denied, 97-1203 (La.10/17/97), 701 So.2d 1333.
The Jackson standard is applicable in cases involving both direct and circumstantial evidence. An appellate court reviewing the sufficiency of evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that the defendant was guilty of every essential element *842 of the crime. State v. Sutton, 436 So.2d 471 (La.1983).
This court's authority to review questions of fact in a criminal case is limited to the sufficiency-of-the-evidence evaluation under Jackson, supra, and does not extend to credibility determinations made by the trier of fact. State v. Williams, 448 So.2d 753 (La.App. 2d Cir.1984). A reviewing court accords great deference to a jury's decision to accept or reject the testimony of a witness in whole or in part. Bosley, supra. In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness's testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. State v. Bellamy, 599 So.2d 326 (La.App. 2d Cir.1992), writ denied, 605 So.2d 1089 (La.1992).
Aggravated criminal damage to property is defined as the intentional damaging of any structure, watercraft, or movable, wherein it is foreseeable that human life might be endangered, by any means other than fire or explosion. La. R.S. 14:55.
The crime of aggravated criminal damage to property requires proof of general criminal intent. State v. Brumfield, 329 So.2d 181 (La.1976). General criminal intent is present when the circumstances indicate that the offender, in the ordinary course of human experience, must have adverted to the prescribed criminal consequences as reasonably certain to result from his act or failure to act. La. R.S. 14:10. Aggravated criminal damage to property is committed upon proof that the accused voluntarily did the act. Brumfield, supra.
In support of his argument, Davenport relies upon his and Carolyn's trial testimony. Davenport testified that as he sought to retreat from the scene as Carolyn reloaded her gun, he believed that he may have been hitting the gas and the brake at the same time which caused the car to go forward and strike the house. Carolyn testified that when Davenport attempted to drive away to evade her gunfire, she believed that the brakes jammed and instead of going backwards the car went forward striking the house because the car brakes had not worked properly for some time before this incident. Nevertheless, the jury obviously chose to disregard their testimony and accept the testimony of the witnesses to this incident, including Johnson, who was a neutral, disinterested eyewitness. Johnson testified that after the shooting had stopped and the ladies had entered the house, Davenport backed the car up and pulled into the driveway at a high rate of speed striking the house. Johnson also observed Davenport flee the scene after hitting the house. Hill also observed Davenport's actions through a window in her home. She testified that she saw him back the car into the road, stop, and drive the car at a high rate of speed toward her house.
In proof of intent, the state also produced evidence of other criminal acts committed by Davenport against Carolyn. The prior acts involved Davenport's unauthorized entry of Carolyn's residence, the destruction of her personal property, and an aggravated battery upon Carolyn in which he beat and severely burned her with an iron.
When viewing this testimony and the state's evidence of previous incidents of Davenport's destruction of Carolyn's personal property and physical battering of her person in the light most favorable to the state, we find that any rational trier of fact could have concluded beyond a reasonable doubt that the evidence was sufficient to prove Davenport's actions were voluntary and intentional. We, therefore, find no merit to this assignment of error.

Excessive Sentence
Davenport first argues that his mandatory life sentence is constitutionally excessive and requests this court consider whether, in this case, the statutorily mandated sentence must yield to the constitutional *843 prohibition against excessive punishment.
Upon his adjudication as a fourth felony offender, with a prior crime of violence under La. R.S. 14:2(13)(e), the defendant was sentenced under La. R.S. 15:529.1A(1)(c)(ii) which states:
If the fourth felony or subsequent felony or any of the prior felonies is a felony defined as a crime of violence under R.S. 14:2(13) or as a violation of the Uniform Controlled Dangerous Substances law punishable by imprisonment for more than five years or of any other crime punishable by imprisonment for more than twelve years, the person shall be imprisoned for the remainder of his natural life, without benefit of parole, probation, or suspension of sentence.
In accordance with these provisions, the trial court sentenced Davenport on October 11, 1999 to the mandatory sentence of life imprisonment without benefit of parole, probation, or suspension of sentence.
The definition of criminal conduct and the provisions of penalties for such conduct is a purely legislative function. State v. Norris, 32,941 (La.App.2d Cir.03/01/00), 754 So.2d 362. Pursuant to this function, the legislature enacted the habitual offender statute which has been held, on numerous occasions, to be constitutional. State v. Johnson, 97-1906 (La.03/04/98), 709 So.2d 672. Since that statute in its entirety is constitutional, the minimum sentences it imposes on recidivists are presumed constitutional. Id.
Although a punishment required by statute may constitute excessive punishment, the appellate courts of this state have recognized that declaring a sentence under the Habitual Offender Law constitutionally excessive should be a rare act, not a commonplace practice. State v. Dorthey, 623 So.2d 1276 (La.1993).
In order to successfully rebut the presumption that the mandatory minimum sentence is constitutional, a defendant must clearly and convincingly show he is exceptional, which in this context means that because of unusual circumstances, this defendant is a victim of the legislature's failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense, and the circumstances of the case. Norris, supra. Additionally, in determining whether Davenport has met his burden, the trial judge must consider that the goals of the Habitual Offender Law are to deter and punish recidivism. Id. Finally, it must be emphasized that the departure downward from the minimum sentence prescribed under the Habitual Offender Law should occur only in rare instances. Id.
We find that Davenport has failed to show any evidence that his particular circumstances warrant a departure from the legislatively mandated sentence of life imprisonment. Davenport has demonstrated a continued propensity for violence toward his family which has been undeterred by previous incarceration and counseling. The present act of violence toward his wife also endangered the lives of two other individuals. We recognize the financial burdens which face Davenport's family. It is nevertheless clear that much of Davenport's failure to support his family resulted from his criminal activities and the resulting incarceration. Under these circumstances, we cannot find that the imposed sentence is so shocking or disproportionate to the crime committed or inappropriate for this particular defendant.

Side-Bar Conference
Davenport next argues that his failure to be present during side-bar conferences held at the bench between counsel and the trial judge violated his constitutional and statutory rights.
There is no jurisprudence or specific statutory provision that requires the defendant's presence at a bench conference in order to satisfy the requirements of La.C.Cr.P. art. 831. State v. *844 Wesley, 33,402 (La.App.2d Cir.05/10/00), 759 So.2d 286. The presence of the defendant is a condition of due process to the extent that a fair and just hearing would be thwarted by his absence, and to that extent only. State v. Kahey, 436 So.2d 475 (La.1983). In certain instances, presence of defense counsel may be sufficient to satisfy the statutory requirement of presence of the defendant at important stages of a trial. Wesley, supra. The right to be present may be waived by the defendant or by his attorney, or by defendant's voluntary absence or his failure to assert an objection to a discussion held in his absence. State v. Strickland, 94-0025 (La.11/01/96), 683 So.2d 218; Wesley, supra.
Davenport contends that four bench conferences violated the provisions of La. C.Cr.P. art. 831 which generally provide that a defendant charged with a felony shall be present at all times during the trial when the court is determining and ruling on the admissibility of evidence. Importantly, Davenport does not claim that he was not present in the courtroom when the side bars were conducted. Nor did defense counsel request Davenport's presence at the side bars or object to Davenport's inability to participate in the conferences.
One instance concerned defense counsel's request to continue questioning Davenport, even though the witness had been tendered. Although the district attorney apparently objected to the continued questioning, the defense request was considered by the court, on the record, and granted. These circumstances obviously present no violation of La. C.Cr.P. art. 831. A second complaint involves a "discussion ... had off the record" which did not involve the trial judge but was rather a discussion between the district attorney and defense counsel regarding an exhibit which was never admitted into evidence. We likewise find no violation of La.C.Cr.P. art. 831 under these circumstances. A third instance concerned a discussion regarding the need for a recess which does not violate La.C.Cr.P. art. 831. Wesley, supra. A fourth situation, occurring during voir dire, involved an objection by the state during defense counsel's explanation of the specific and general criminal intent statute to the jury venire. A discussion was held at the bench, and defense counsel thereafter finished his explanation of the statute and proceeded to question the jury. Because it is apparent that the state's objection was overruled, Davenport has failed to show that his absence thwarted a fair and just hearing on the issue.
Moreover, in each of the above instances in which side bars were conducted, the participation of defendant's counsel during these discussions and Davenport's continuous presence in the courtroom were sufficient to provide the constitutional protection mandated by La.C.Cr.P. art. 831. Finally, Davenport has waived any claim of error regarding his absence at the side bar conferences by failing to object. La. C.Cr.P. art. 841.

Other Crimes Evidence
In this assigned error, Davenport argues that the trial court erroneously ruled following a Prieur hearing that the state could admit evidence of defendant's prior crimes involving Carolyn. Specifically, the defendant claims that the only victim in this case was Hill, that the state did not prove by clear and convincing evidence defendant was guilty of an aggravated burglary or unauthorized entry of Carolyn's residence in 1992, and that photographs of the burns to Carolyn taken in connection with the aggravated battery charge against defendant were prejudicial and improperly admitted.
On July 17, 1997, the state filed a 404(B) notice which indicated its intent to introduce evidence regarding (1) a May 24, 1992 incident in which Davenport was charged with the unauthorized entry of Carolyn's residence in which he allegedly destroyed *845 $2,000 of her personal property; and, (2) an August 15, 1992 incident in which Davenport committed an aggravated battery upon Carolyn by beating and severely burning her with an iron.
At a Prieur hearing on November 6, 1997, the trial court heard the testimony of Assistant District Attorney, Hugo Holland ("Holland"), regarding the arrest, investigation and disposition of the above charges against defendant and the testimony of the defendant. Holland testified that Davenport had broken into Carolyn's residence after they had broken up and destroyed approximately $2,000 worth of her personal property, and that approximately three months later, after she dropped the unauthorized entry charge, he severely beat and burned her with an iron. Defendant denied that he wrongfully entered Carolyn's residence or that he burned her with an iron. He claimed that she accidently fell on the iron. Defendant did, however, admit to beating Carolyn in connection with the aggravated battery charge. He also claimed to have accidentally damaged Hill's home in the present incident.
At the close of the hearing, the trial court took the matter under advisement and allowed counsel to submit briefs. On November 13, 1997, the trial court issued an opinion which states, in part, as follows:
In the 404(B) hearing, the Defendant claimed that he lost control of the vehicle and hit the house near the spot where the victim and her mother were standing under the carport. The State claims the evidence of the Defendant's prior violence toward the victim and his history of destruction of her property will help to prove absence of mistake or accident, and is, therefore, allowed by 404(B).
It seems clear from the testimony heard at the 404(B) hearing and from a review of the record of this case that the Defendant has a history of violence against Ms. Hill [sic]. These prior acts seem to be precisely what the exception to 404(B) provides for. It is clear that presentation of evidence of these prior acts would have an independent relevance that would outweigh any prejudice against the Defendant that it might create in the eyes of the jury. Rather than acting as an attempt to show the bad character of the Defendant, they tend to show that the act of running a car into the house in near proximity to the victim was not a mistake as he claims, but actually an action in conformity with a pattern of behavior between these two people.
A trial court's ruling on the admissibility of evidence of other crimes will not be overturned absent an abuse of discretion. State v. Blackwell, 30,281 (La. App.2d Cir.11/10/97), 701 So.2d 1389, writ denied, 97-3073 (La.02/13/98), 709 So.2d 755.
For evidence of other crimes to be admissible, the state must prove with clear and convincing evidence (1) that the other acts or crimes occurred and were committed by the defendant; (2) demonstrate that the other acts satisfy one of the requirements of La. C.E. art. 404 B(1) [motive, intent, knowledge, identity, absence of mistake or accident], and that this evidence is relevant to the outcome of the case; and (3) show that the probative value of the evidence outweighs its prejudicial effect. State v. Jackson, 625 So.2d 146 (La.1993). La. C.E. art. 404B(1) clearly recognizes that other "acts," and not merely convictions, may be admissible. State v. Mamon, 26,337 (La.App.2d Cir.12/16/94), 648 So.2d 1347, writ denied, 95-0220 (La.06/02/95), 654 So.2d 1104.
Clearly, the testimony of Holland and Davenport's limited admissions are sufficient to establish by clear and convincing evidence that Davenport committed the prior criminal acts. Moreover, evidence of Davenport's prior acts against Carolyn are clearly relevant to show the absence of mistake or accident and Davenport's motive for the crime. See, State v. Walker, 394 So.2d 1181 (La.1981). With *846 Davenport claiming that he accidentally damaged Hill's house, this other crimes evidence tended to prove a disputed fact genuinely at issue. Certainly, evidence of Davenport's violence when he fought with Carolyn tends to negate the defense that he acted without intent in damaging Hill's home. Mamon, supra at 1356.
Likewise, because of the similarity of pattern of conduct by Davenport toward Carolyn, we find that the probative value of this evidence outweighed any potential prejudice to Davenport. Notably, Carolyn was a hostile witness for the state and testified that this incident was essentially her fault and accidental. Through the course of their relationship, defendant had shown a marked ability to manipulate Carolyn into dismissing charges or altering the facts to make him appear less culpable. Moreover, any prejudice which may have resulted was cured by the trial court's limiting instruction to the jury regarding the proper consideration of this evidence.
For the same reasons, we find no merit to Davenport's final argument regarding the photographs depicting Carolyn's physical condition relating to the August 15, 1992 aggravated battery conviction which were offered into evidence at the 404B hearing. The photographs not only tended to show a similarity of pattern of conduct toward Carolyn, which assisted in proving lack of mistake or accident, but were also relevant to show that Davenport possessed the requisite general intent to commit the present crime. Under these circumstances, we find that the probative value of the photographs outweighed any prejudicial effect which the subject matter of the photos may have presented. Moreover, any prejudice which may have resulted from the admission of the photographs showing the injuries to Carolyn was minimized because Davenport had ample opportunity on cross-examination to rebut the evidence and, during his testimony, was able to explain to the jury his version of the story.

Habitual Offender Adjudication
In this assignment of error, Davenport claims that the trial court erred in finding that the state presented sufficient proof to establish his three prior convictions as predicate offenses at the habitual offender hearing. Specifically, Davenport argues that the documents admitted at the hearing were insufficient to prove that he was the defendant convicted in 1984 of attempted simple burglary and that his guilty pleas to aggravated battery and middle grade theft were constitutionally infirm.
On May 29, 1998, the district attorney filed a habitual offender bill of information charging Davenport as a fourth felony offender. On January 12, 1999, Davenport filed a motion to quash the habitual offender bill raising the issues raised on appeal and other Boykin claims. On April 15, 1999, the trial court denied Davenport's motion and after a hearing adjudicated him a fourth felony offender with a prior conviction of a crime of violence.
If the defendant denies the allegations of the bill of information, the burden is on the state to prove the existence of the prior guilty pleas and that the defendant was represented by counsel when they were taken. If the state meets this burden, the defendant has the burden to produce some affirmative evidence showing an infringement of his rights or a procedural irregularity in the taking of the plea. If the defendant is able to do this, then the burden of proving the constitutionality of the plea shifts to the state. The state will meet its burden if it introduces a "perfect" transcript of the taking of the guilty plea, one which reflects a colloquy between judge and defendant wherein the defendant was informed of, and specifically waived, his right to trial by jury, his privilege against self-incrimination, and his right to confront his accusers. If the state introduces anything less than a "perfect" transcript, i.e., a guilty plea form, a minute entry, an "imperfect" transcript, or any combination thereof, the judge then must *847 weigh the evidence submitted by the defendant and by the state to determine whether the state has met its burden of proving the defendant's prior guilty plea was informed and voluntary, and made with an articulated waiver of the three Boykin rights. State v. Shelton, 621 So.2d 769 (La.1993). The state's burden of proof may be met by a contemporaneous record of the guilty plea proceedings, preferably by the transcript itself. Id.
In this case, the state introduced certified copies of the bills of information, trial court minutes, and guilty plea transcripts in order to prove each of Davenport's predicate felony offenses.
Davenport argues that the state failed to prove he was the person convicted of the 1984 attempted simple burglary conviction, the first felony conviction alleged in the habitual bill, because the bill of information charging the offense contained no fingerprints. We cannot agree. Although the copy of the bill of information submitted by the state in proof of the offense contained no fingerprints, the record shows that the state included the booking documents, S-2 and S-4, relating to the charge and which contained fingerprint identification. A fingerprints expert employed by the Shreveport Police Department, Officer Danny Duddy ("Duddy"), confirmed that the thumbprints on S-2 and S-4 matched Davenport's. This testimony is sufficient to identify Davenport as the individual who committed the 1984 attempted simple burglary offense (First Judicial District docket number 127,540). Further, the defendant admitted that he had pled guilty to this offense during cross-examination at trial. We, accordingly, find no merit to Davenport's first contention.
Davenport next points out that at the guilty plea of the second offense, aggravated battery, relied upon by the state in the bill of information (First Judicial District docket number 160,757), the trial court incorrectly informed him that upon pleading guilty, he waived any right to file for post-conviction relief. Davenport apparently seeks invalidation of the plea as a violation of his right to due process. Clearly, an advisement regarding the right to post-conviction relief is not included within the Boykin requirements. State v. Guzman, 99-1753 (La.5/16/00), 769 So.2d 1158. Moreover, unlike the three Boykin rights, post-conviction relief is not required by the Due Process Clause of the United States Constitution and is, therefore, not a constitutionally protected right. State ex rel. Glover v. State, 93-2330 (La.09/05/95), 660 So.2d 1189. We, accordingly, decline to invalidate the plea based upon the trial court's error in advice.
In his final argument, Davenport claims that the third offense, middle grade felony theft, which forms the basis of the habitual offender bill (First Judicial District docket number 179,928), is invalid because the statement of facts given by the state at the guilty plea failed to establish all elements of the crime. Specifically, Davenport argues that there are no facts in the colloquy which indicate that the taking occurred without the consent of the owner. However, when a guilty plea is otherwise voluntary, there is no necessity to ascertain a factual basis for the plea unless the accused protests his guilt or for some reason is put on notice that there is a need for such inquiry. State v. Wills, 32,073 (La.App.2d Cir.06/16/99), 740 So.2d 741. Because Davenport does not contest the voluntariness of this plea of guilty, he cannot now complain of the lack of a sufficient basis for the sentence. Moreover, it is apparent from the transcript of the proceedings that the trial court properly Boykinized Davenport and inquired of his age and understanding of the charges and sentences. We, therefore, find no merit to this argument.

Error Patent Review
In this final assignment of error, Davenport requests review of the record for patent errors. This request is unnecessary *848 because review for errors patent is made automatically in all criminal cases. State v. Bryant, 29,344 (La.App.2d Cir.05/07/97), 694 So.2d 556. In conducting this review, no patent errors were noted.

CONCLUSION
For the above-stated reasons, we find no merit to Davenport's claims and affirm his conviction and sentence.
AFFIRMED.
NOTES
[1] Davenport and Carolyn had lived together on and off before they were married on September 11, 1997. The two have a long history of torment and abuse and Davenport is the father of at least four of Carolyn's six children.