SEXTON, Judge Pro Tem.
| defendant Jason Wesley Price was convicted by a six-person jury of aggravated criminal damage to property and was sentenced to serve 12 years’ imprisonment at hard labor. Defendant now appeals, raising two assignments of error. For the reasons stated herein, the conviction and sentence of Defendant are affirmed.

FACTS

Defendant and his wife, Debra, live in Shreveport, Louisiana. Debra is employed as a housekeeper at a retirement home. On July 4, 2010, Defendant and Debra attended a barbecue at a relative’s home and Debra said that Defendant started drinking gin or vodka after 10:00 a.m. that morning. He drank all day on the 4th and continued drinking until the early morning hours of July 5, 2010.
*538 On the morning of July 5, Debra took the couple’s daughter to school and drove to her job at the retirement home. As she was sitting in the car in the parking lot, Defendant — who had driven his car to the retirement home and parked next to her— got out of his car and approached her window to talk to her. Debra explained that Defendant told her that he just wanted to talk, but Debra refused to talk to him because he had been drinking. She told him that they would talk when they got home.
Mabel Davis, a resident of the retirement home, watched the incident from the window of her room. She recounted that Defendant was standing beside a car and:
He looked like he might be agitated, using his both hands like that (indicating) towards the glass of the car.
li>Ms. Davis could not hear what Defendant was saying because he was too far away, so she turned away from her window.
Defendant got back into his car, a 1989 Cadillac Sedan DeVille. Debra reported that, as she was reaching over to get her purse, she felt her car being hit. The impact to her car was on the driver’s side. Defendant had driven his car into the driver’s side of Debra’s car. After the first hit, Defendant backed up and hit Debra’s car a second time in the same place. Debra stated that Defendant’s actions made her angry, so she called the police. At trial, however, Debra described his actions as “an accident,” and explained that her husband was “very intoxicated” at the time.
Ms. Davis, who was still inside the retirement home at the time of the crash, did not see the first impact. She did, however, hear the first hit, which she described as a “banging,” and then looked out of the window where she saw the second crash. Ms. Davis explained:
A: [H]e had run into this car, side of this car. Then he backed up and hit it again. And the back part of that car, the car that she was in, lifted completely up. That’s — but he left.
Q: So ... the back part of the car that he hit went up in the air a little bit?
A: Uh-huh, a little ways.
Ms. Davis also stated:
It was hit so hard that it lifted that back rear on the driver’s side up where I could see that.
Debra’s car, a 2007 Dodge Charger, was declared a total loss by her insurance company. Debra denied that she was injured as a result of the crashes.
| ¡¡Defendant had a history of crimes of violent acts in which his wife was the victim. In December 2009, Defendant pled guilty to one count of second degree battery. Despite his guilty plea to the offense where she was the victim, Debra explained that, in that incident, “I really ran into a barbecue grill” and “he was just behind me.” Apparently, that offense involved Defendant’s use of a vehicle as well. Debra was running away from Defendant, who was driving a car, when she ran into the grill. Debra denied that Defendant pushed her into the grill.
Also in December 2009, Defendant pled guilty to one count of aggravated second degree battery of Debra. When asked if Defendant had hit her with “a wooden stick or a wooden object,” Debra said, “He didn’t hit me with a wooden object. And I told them that.” She explained that she actually ran into a patio table and that, “He pled guilty to it to come home.” On each occasion, including the instant offense, Debra informed prosecutors that she did not want to proceed with charges.
At the time of this incident, Defendant was on supervised probation for both of *539 the prior offenses and his probation officer was Petrinia .Moore. One of the conditions of probation was that Defendant was to have no violent contact with Debra. Ms. Moore testified that Debra called her on July 6, 2010, and related the facts of the instant incident to her. Ms. Moore explained that Debra told her that the impact to her car “was so hard that it pushed her car into the car that was parked next to her” and Debra never told the probation officer that the event was an accident.
| ¿The jury unanimously found Defendant guilty as charged. Defendant filed post-trial motions for acquittal and new trial, which were denied. There was no presen-tence investigation report. At sentencing, the judge stated that he had reviewed the sentencing guidelines in La. C. Cr. P. art. 894.1. He explained:
The lady who was the victim in this case was the victim twice before with this man. It’s fortunate that she wasn’t killed or seriously injured. He rammed his car into hers in what the Court believes was a fit of anger. He had twice had altercations with her that I think placed her in serious physical jeopardy, including once chasing her, basically, in an automobile when she was on foot.
The judge found that there was a serious risk that Defendant would commit another crime if he were not incarcerated. Accordingly, the judge sentenced Defendant to serve 12 years’ imprisonment at hard labor. Defendant filed a timely motion to reconsider sentence, which was denied. This appeal ensued.

DISCUSSION

Assignment of Error No. One: The evidence was insufficient for Jason Wesley Price’s conviction of aggravated criminal damage to property.
Defendant argues that the State failed to prove that he committed aggravated criminal damage to property because “there is no evidence from any witness that the damaging of Debra Price’s vehicle was intentional.” Defendant does not challenge the State’s proof of any other element of the offense.
The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential | ¿elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). This standard, now legislatively embodied in La. C. Cr. P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. State v. Pigford, 05-0477 (La.2/22/06), 922 So.2d 517. The appellate court does not assess the credibility of witnesses or reweigh evidence. State v. Smith, 94-3116 (La.10/16/95), 661 So.2d 442. A reviewing court accords great deference to a jury’s decision to accept or reject the testimony of a witness in whole or in part. State v. Eason, 43,788 (La.App.2d Cir.2/25/09), 3 So.3d 685, writ denied, 09-0725 (La.2/11/09), 23 So.3d 913; State v. Hill, 42,025 (La.App.2d Cir.5/9/07), 956 So.2d 758, writ denied, 07-1209 (La.12/14/07), 970 So.2d 529.
La. R.S. 14:55 provides, in part:
Aggravated criminal damage to property is the intentional damaging of any structure, watercraft, or movable, wherein it is foreseeable that human life might be endangered, by any means other than fire or explosion.
The “intent” referred to in La. R.S. 14:55 is general criminal intent. State v. Davenport, 33,961 (La.App.2d Cir.11/1/00), 771 So.2d 837, writ denied, 00-3294 *540 (La.10/26/01), 799 So.2d 1150. As this Court explained:
General criminal intent is present when the circumstances indicate that the offender, in the ordinary course of human experience, must have adverted to the prescribed criminal consequences as reasonably certain to result from his act or failure to act. La. R.S. 14:10. Aggravated criminal damage to property is committed upon proof that the accused voluntarily did the act. [State v.] Brumfield, [329 So.2d 181 (La.1976).]
 Despite Defendant’s contention that this incident was nothing more than a drunken accident and the victim’s concurrence at trial in that assessment, the testimony of Ms. Davis shows otherwise. Ms. Davis saw the incident beginning shortly after the first impact and she said that, after the first impact, Defendant “backed up and hit it again.” The second impact was so severe that it “lifted that back rear on the driver’s side up” and the combination of the impacts caused Debra’s full-size automobile to be a total loss. Both impacts were at the driver’s door of Debra’s car, where she was sitting at the time of the incident.
Defendant’s prior violent criminal acts against his wife also support the jury’s finding that Defendant acted intentionally in this incident. See State v. Davenport, supra. Defendant already had one conviction for an event where he apparently was trying to chase and hit his wife with his car.
Viewing the evidence in the light most favorable to the State, any rational trier of fact could have concluded beyond a reasonable doubt that the evidence was sufficient to prove that Defendant’s acts were committed intentionally. This assignment of error is without merit.
Assignment of Error No. Two: The sentence of twelve years imposed upon Jason Wesley Price is an excessive sentence.
In his second assignment of error, Defendant urges that his sentence is excessive. He argues that the trial judge did not review a presentence investigation report, did not articulate any mitigating factors and did not consider his family ties, marital status, health or employment in fashioning the sentence. Further, Defendant argues that his wife did not want him prosecuted for his actions.
|7The test imposed by the reviewing court in determining the excessiveness of a sentence is two-pronged. First, the record must show that the trial court took cognizance of the criteria set forth in La. C. Cr. P. art. 894.1. The trial judge is not required to list every aggravating or mitigating circumstance so long as the record reflects that he adequately considered the guidelines of the article. State v. Smith, 433 So.2d 688 (La.1983); State v. Lathan, 41,855 (La.App.2d Cir.2/28/07), 953 So.2d 890, writ denied, 07-0805 (La.3/28/08), 978 So.2d 297. The articulation of the factual basis for a sentence is the goal of La. C. Cr. P. art. 894.1, not rigid or mechanical compliance with its provisions. Where the record clearly shows an adequate factual basis for the sentence imposed, remand is unnecessary even where there has not been full compliance with La. C. Cr. P. art. 894.1. State v. Lanclos, 419 So.2d 475 (La.1982); State v. Swayzer, 43,350 (La.App.2d Cir.8/13/08), 989 So.2d 267, writ denied, 08-2697 (La.9/18/09), 17 So.3d 388.
Second, a sentence violates La. Const. Art. 1, § 20, if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State v. Smith, 01-2574 (La.1/14/03), 839 So.2d 1; State v. Dorthey, 623 So.2d 1276 (La.1993); State v. Bonanno, 384 *541 So.2d 355 (La.1980). A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. State v. Weaver, 01-0467 (La.1/15/02), 805 So.2d 166; State v. Lobato, 608 So.2d 739 (La.1992); State v. Robinson, 40,983 (La.App.2d Cir.1/24/07), 948 So.2d 379; State v. Bradford, 29,519 (La.App.2d Cir.4/2/97), 691 So.2d 864.
La. R.S. 14:55 provides, in part:
Whoever commits the crime of aggravated criminal damage to property shall be fined not more than ten thousand dollars, imprisoned with or without hard labor for not less than one nor more than fifteen years, or both.
Defendant’s 12-year sentence is toward the more severe end of the range, but the factors recited by the trial judge provide ample support for the sentence. Defendant has been convicted of, at minimum, three violent crimes; and, in each case, the victim of the offense was his wife. One of the prior offenses involved the use of a wooden weapon and the other involved the use of his car to chase his wife, who was on foot. These are not trivial offenses. Moreover, Defendant was on probation for those crimes when he committed this crime. In the instant case, as noted, Defendant crashed his car into his wife’s car, while she was inside the car, with sufficient force to lift the wheels of his wife’s car off the ground. The trial judge’s statement that Defendant was likely to reoffend if not incarcerated is well supported by the record; and, overall, the trial court’s compliance with the sentencing guidelines was sufficient. Finally, the 12-year sentence is not constitutionally excessive; Defendant’s apparently escalating violence toward his wife warranted this upper-range penalty.
This assignment of error is without merit.
|3Error Patent
The trial court denied Defendant’s motions for new trial/post-verdict judgment of acquittal and immediately imposed sentence thereafter. La. C. Cr. P. art. 873 provides:
If a defendant is convicted of a felony, at least three days shall elapse between conviction and sentence. If a motion for a new trial, or in arrest of judgment, is filed, sentence shall not be imposed until at least twenty-four hours after the motion is overruled. If the defendant expressly waives a delay provided for in this article or pleads guilty, sentence may be imposed immediately.
(Emphasis added.) The record does not show that Defendant expressly waived the delay for the imposition of sentence upon the denial of his post-verdict motions. In many instances, the failure to observe this delay is deemed harmless error; see, e.g., State v. Roberson, 40,809 (La.App.2d Cir.4/19/06), 929 So.2d 789; State v. Wilson, 469 So.2d 1087 (La.App. 2d Cir.1985), unit denied, 475 So.2d 778 (La.1985). While Defendant complained about his sentence on appeal, he has not explicitly alleged that (1) the delay would have helped him, perhaps affording time for a PSI or (2) that he was actually prejudiced by the absence of the delay. Thus, we find that the trial court’s error was harmless.
Further, at sentencing, the trial court did not adequately advise Defendant of the time period within which to apply for post-conviction relief. The language of La. C. Cr. P. art. 930.8(C), which requires the trial court to inform the defendant of the limitation period for filing an application for post-conviction relief, is supplicato-ry and does not bestow an enforceable right on an individual defendant. The failure to so advise is |innot grounds to vacate *542 the sentence and remand for resentencing. State v. Cooper, 31,118 (La.App.2d Cir.9/23/98), 718 So.2d 1063, twit denied, 99-0187 (La.5/14/99), 741 So.2d 663.
We hereby advise Defendant that no application for post-conviction relief, including applications which seek an out-of-time appeal, shall be considered if it is filed more than two years after the judgment of conviction and sentence have become final under the provisions of La. C. Cr. P. arts. 914 or 922. See State v. Pugh, 40,159 (La.App.2d Cir.9/21/05), 911 So.2d 898.

CONCLUSION

For the foregoing reasons, the conviction and sentence of Defendant Jason Wesley Price are affirmed.
AFFIRMED.